## 33732. WOODS v. THE STATE.

HILL, Justice.

The jury found the defendant guilty of murder and she was sentenced to life in prison. The jury was authorized from the evidence to find that on the night in question the defendant and the victim had an argument at the victim's trailer, that the defendant's husband broke up the fight between the two women by forcing his wife to the floor, and that the defendant and her husband then went to their own trailer located about 200 feet away. A half hour later, the defendant returned to the victim's trailer carrying a butcher knife. When the victim opened the trailer door, the defendant pulled her out onto the steps. The victim was heard to say, "Oh my God. Donna, don't cut me, please don't cut me." A struggle ensued in the presence of three eyewitnesses. The victim was stabbed three times. The defendant asked one of the eyewitnesses to call the police and then said to the witness "I meant to do it, but I hope she don't die." The victim was alive when she was removed to the hospital. She died the next day, from the three stab wounds.

The defendant testified at trial that she had been drinking and arguing with the victim, that she did not intend to kill the victim, and that she hit her head during the scuffle and could not remember what happened after that. She admitted that the knife was hers and that she had it in her hand the last she remembered. The jury was charged as to murder, voluntary manslaughter and accident, and found the defendant guilty of murder.

1. The police officer who responded to the call testified that in the process of administering first aid to

the victim she told him that she did not want to press charges. The officer knew that the defendant had been involved in the fight. After a detective arrived and the police officer was leaving the trailer court in his car, he saw the defendant's husband. The officer asked the defendant's husband if he knew his wife's whereabouts. The husband called the defendant over to the car. The officer, still in his car, asked the defendant if she would talk with the detective. The defendant said that she would and asked the officer how the victim was. The officer stated that he did not know, that the ambulance had taken the victim to the hospital. The defendant then said "I went down there to kill her, nobody laughs at me about getting my ass kicked."

The defendant contends that this statement is inadmissible because the "finger of suspicion" had sufficiently pointed to the defendant so as to require that she be advised of her constitutional rights under Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). By its own terms Miranda is applicable to in-custody interrogation; it does not apply to general on-the-scene questioning. 384 U. S. at 477-478; Wilburn v. State, 230 Ga. 675 (2) (198 SE2d 857) (1973). The statement in question was voluntarily and spontaneously offered by the defendant prior to her being taken into custody and was thus properly admitted by the trial court. Tucker v. State, 237 Ga. 777 (2) (229 SE2d 617) (1976). The officer's testimony that he wanted to "secure" the defendant does not show that he intended to arrest her, but that he wanted to secure her presence for the detective. In fact, after this conversation the officer left the defendant and drove off without reporting further to the detective at that time.

2. The detective testified that he had been informed that a fight had occurred between the victim and the defendant but that he was not aware of any statements made by the defendant. The detective interviewed the defendant and her husband in the front seat of his automobile with the passenger door open.

The detective asked the defendant if she would like to tell what had happened during the incident. No Miranda warnings were given. The defendant made a statement

referring to the argument with the victim and the fight with the defendant's husband and admitting that the defendant had returned to the victim's trailer with the knife. The detective took down the statement and had the defendant sign it (hereinafter "the first signed statement"). At the conclusion of this interview, the defendant and her husband left the automobile and returned to their trailer.

The victim died the following morning and a warrant for the defendant was obtained. She was arrested at her trailer and fully advised of her Miranda rights. After being taken to police headquarters, the defendant signed a second statement to the effect that she had been fully advised of her rights, that she understood the charge, that she had reviewed her first signed statement and that she wished to stand by that statement without adding or subtracting anything from it.

The trial court ruled that the two signed statements were admissible. The defendant contends that because she was not advised of her Miranda rights prior to making the first signed statement, both statements were thus inadmissible.

Rather than decide whether a second statement may incorporate a prior statement under the circumstances of this case, and pretermitting the issue of harmless error, we find that the defendant's first written statement given while sitting in the detective's automobile was not made while in custodial interrogation or under other compelling influences.

In Miranda v. Arizona, supra, the United States Supreme Court promulgated the following rules pertaining to police interrogation of a suspect: ". . . the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U. S. at 444.

A person is not entitled to Miranda warnings as a

matter of right, even though that person is a suspect, unless that person had been taken into custody or has been deprived of freedom of action in another significant way. Beckwith v. United States, 425 U. S. 341 (96 SC 1612, 48 LE2d 1) (1976). In Beckwith, two special agents of the Internal Revenue Service investigating possible criminal tax fraud, questioned Beckwith at his home for three hours. Beckwith was not informed of the rights as specified in Miranda and made certain statements which the trial court refused to suppress. On appeal, the United States Supreme Court stated: "Although the 'focus' of an investigation may indeed have been on Beckwith at the time of the interview in the sense that it was his tax liability which was under scrutiny, he hardly found himself in the custodial situation described by the Miranda court as the basis for its holding." 425 U. S. at 347. The court rejected the contention that an agent's request for an interview places a suspect in "functional" custody and rejected the argument that Miranda should be extended to cover police interrogation of suspects not in custodial circumstances, reasoning that Miranda required that warning be given before interrogation of people in a police-dominated atmosphere. 425 U. S. at 346.

The Supreme Court again considered the scope of "custodial interrogation" last year in Oregon v. Mathiason, 429 U. S. 492 (97 SC 711, 50 LE2d 714) (1977). There, the owner of a burglarized house told police she suspected Mathiason, a parolee. The police left a note at the suspect's apartment requesting him to call. When the suspect called, an interview was scheduled at a nearby state patrol office. The door was closed and the suspect was told that he was not under arrest. The officer stated that the police believed Mathiason had committed the burglary because his fingerprints had been found at the scene of the crime. (In fact, the police had not found Mathiason's fingerprints.) After the officer advised the suspect that a district attorney or judge might favorably consider truthfulness, Mathiason confessed within minutes after entering the room. He was then given his Miranda warnings and gave a taped confession. The interview, which lasted about 30 minutes altogether, terminated and Mathiason left the police office. The

Supreme Court concluded that Miranda warnings had not been required: "Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." 429 U. S. at 495.

Whether or not she was a suspect, the defendant in the present case was not in custody or in a coercive environment at the time she, accompanied by her husband, was questioned by the detective in his automobile at the trailer court. Cf. *Shy v. State,* 234 Ga. 816, 821 (218 SE2d 599) (1975); *Smith v. State,* 236 Ga. 12, 19 (222 SE2d 308) (1976). The trial court did not err in admitting the first signed statement, nor in admitting the second one.

3. The defense in its opening statement and during cross examination of the police officer, referred to the statement made by the victim while waiting for the ambulance that the stabbing was not the defendant's fault and that the victim did not want to press any charges. The trial court admitted the statement and instructed the jury that the deceased could not determine whether the prosecution should or should not be pursued and that this was a matter entirely between the state and the accused. The court also instructed the jury that the statement was admissible for the limited purpose of showing the intent of the parties. The trial court did not

err when it limited the admissibility of the victim's statement. See *Williams v. State,* 126 Ga. App. 302 (1) (190 SE2d 807) (1976); see also Code Ann. § 27-1801.

4. The defendant enumerates as error the trial court stating that the defendant's written statements would be available for the jury to read. The defendant failed to object at trial and thus waived the right to raise this on appeal. *Daniels v. State,* 230 Ga. 126, 127 (195 SE2d 900) (1973); *Clenney v. State,* 229 Ga. 561 (3) (192 SE2d 907) (1972); *Blevins v. State,* 220 Ga. 720 (3) (141 SE2d 426) (1965). Even had defendant raised a proper objection, she has failed to demonstrate any harm from the trial court's statement, (*Chenault v. State,* 234 Ga. 216, 220 (215 SE2d 223) (1975)), because the written statements in question did not in fact go out with the jury.

5. We have carefully examined the remaining enumerations of error and find them to be without merit.

*Judgment affirmed. All the Justices concur.*

SUBMITTED JUNE 13, 1978 — DECIDED SEPTEMBER 5, 1978 — REHEARING DENIED SEPTEMBER 28, 1978.

*G. Hughel Harrison,* for appellant.

*Bryant Huff, District Attorney, Dawson Jackson, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Staff Assistant Attorney General,* for appellee.