A89A2193. ARENA v. THE STATE.
A89A2196. DUNN v. THE STATE.
(392 SE2d 264)

BIRDSONG, Judge.

Vito Arena and Sherrill Bryant Dunn filed separate appeals of convictions arising out of their arrest following a traffic stop at Interstate 95 near Richmond Hill in Bryan County, Georgia, on October 5, 1987.

Vito Arena, the driver of the vehicle, was indicted for and found guilty of trafficking in cocaine, possession of ethchlorvynol, possession of diazepam, possession of marijuana; speeding and improper lane usage. Sherrill Bryant Dunn, the passenger, was indicted and found guilty of all but the traffic offenses and possession of marijuana.

Despite contradictory testimony by appellants, the evidence as to the traffic stop, detention and arrest, and the discovery of contraband authorized the trial court at the motion to suppress to conclude, and we must concur (see *Williams v. State*, 251 Ga. 749, 791-792 (312 SE2d 40)), as follows: On the morning of October 5, 1987, Bryan

County Sheriff's Deputy Suggs was patrolling I-95. At about 5:10 or 5:14 a.m., Suggs saw a white Oldsmobile traveling north. Suggs followed the vehicle for three miles, saw it cross over and "straddle" the centerline, and observed it alternately speed up and then slow down a couple of times, from 55 mph to 65 mph. Because of the improper lane usage and the otherwise erratic driving, Suggs stopped the Oldsmobile. Although Arena produced proper driver's identification and spoke coherently, he had the odor of alcohol on his breath. He appeared to Suggs to be nervous and "jumpy," and would not make eye-to-eye contact. He told Suggs he and Dunn were going to Hilton Head, South Carolina, just to "take a little break." Suggs determined not to perform field tests for sobriety because Arena seemed not to be impaired, but Suggs became suspicious of illegal activity because of Arena's nervous, jumpy behavior and inability to make eye contact. Suggs asked Arena to get back into the car, and asked the passenger to get out. When Suggs asked where they were going, Dunn told him they were going to Myrtle Beach, South Carolina to his father's funeral. Because of the discrepancy in appellants' stories as to their destination, Officer Suggs asked both to remain in their car and he radioed for back-up assistance.

Officer Long arrived five or six minutes later. Suggs got appellant Arena from the car and Long asked for permission to search the vehicle. Neither officer had a standard consent-to-search form in his possession, so Officer Long wrote out this statement: "I, Arena Vito, voluntarily give Deputy D. R. Suggs and Cpl. Mark Long of [Bryan County Sheriff's Department] and [Richmond Hill Police Department] permission to search my vehicle. I understand that I have the right to refuse this search, and that I may be prosecuted if any illegal items are found. I further understand that I will be given a receipt for anything removed from my vehicle. [Signed] Vito Arena." Beneath this, Cpl. Long wrote "Cpl. Mark Long 10-5-87[;] 0529 Hours." The initials "V. A." appear twice, beneath the notation of date and beneath the notation of hour. Officer Long testified he explained the consent to search form to Vito Arena. Appellant Arena was coherent; he signed the form and made no objection either to signing the consent form or to the search.

While Arena and Dunn sat in separate police cars, Officer Long looked into the vehicle interior and Officer Suggs opened the trunk. The officers saw a great deal of coffee grounds spread on the floor of the trunk, and a five-pound coffee can. Deputy Suggs opened the plastic lid of the coffee can and saw the can was "almost level or full of coffee." Both he and Officer Long were "baffled" because there was so much coffee spilled in the trunk, yet the coffee can was still full. Officer Long picked up a screwdriver and stuck it down into the coffee can. The screwdriver went down about an inch deep until it made

a "thump noise." Suggs and Long emptied the coffee and found a white plastic material, sealed with a wax-like substance, under which was a white powdery substance inside clear plastic. Long and Suggs placed Arena and Dunn under arrest and called the GBI. A GBI agent arrived at the scene; she was given the consent to search form signed by Arena. She advised him of his rights under *Miranda* but Arena refused to make a statement.

At the sheriff's jail, Arena pulled a bag of marijuana out of his pants and gave it to the officers. The vehicle was impounded and a subsequent search of it revealed amounts of ethchlorvynol and diazepam.

Both appellants complain of the trial court's denial of their motions to suppress, and each complains of the denial of his motion to sever trial, and of other errors. *Held:*

1. We have carefully considered both appellants' varied grounds for complaint of the search and seizure. We find that the initial traffic stop was clearly valid. The continued detention and further questioning, or "secondary detention," was authorized as a *Terry*-type stop based upon the *"articulable suspicions"* aroused by Arena's behavior. See *Watson v. State*, 190 Ga. App. 696 (379 SE2d 817). This continued detention was not an illegal arrest, and is not invalidated merely because there was no *probable cause* at that point to suspect illegal activity, i.e., drug possession and trafficking. See *Clinkscale v. State*, 158 Ga. App. 597 (281 SE2d 341). The secondary detention, following the aroused suspicions, was not a de facto arrest. Appellants were briefly detained while a search was made pursuant to consent, but they were not arrested until contraband was discovered. It is irrelevant to this analysis that Arena was never charged with a traffic violation; all that is necessary is that the initial stop be valid, and that the continued *Terry*-type detention was based upon articulable suspicion. The officer was then authorized to make a brief intrusion short of arrest to maintain the status quo and investigate the circumstances that provoked the suspicions. See *Radowick v. State*, 145 Ga. App. 231, 233-234 (244 SE2d 346), cert. den.; cited with approval, *State v. Hughes*, 189 Ga. App. 671 (377 SE2d 192); *Hudgins v. State*, 188 Ga. App. 798, 799 (374 SE2d 566); *State v. Bassford*, 183 Ga. App. 694, 698 (359 SE2d 752).

In *State v. Golden*, 171 Ga. App. 27, 30 (318 SE2d 693), a valid stop had already been made when articulable suspicion was raised. We held the search proper, for "[i]t is well established that the police may 'seize' an individual for a brief period of time without probable cause to make an arrest, provided there exists a reasonable and articulable suspicion that the person is involved in criminal activity. See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). The purpose of such a detention is to maintain the status quo while inves-

tigating the circumstances which give rise to the suspicion of criminal wrongdoing. [Cits.] The validity of an officer's investigative or protective conduct upon making a *'Terry* stop' is determined in each case by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced. [Cits.]"

Balancing "the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced" (id.), we find as a matter of law that the recurring and well-known practice of transporting illegal drugs through this state north from the bordering state of Florida, which is itself a well recognized depot of drug contraband, presents a circumstance of vital immediacy and importance in crime prevention, which in this case justified the further brief detention based on distinct "articulable suspicion."

Thereafter, the consent to search authorized the entire search, including the opening of the coffee can which the officers had strong probable cause to believe contained contraband. See *Anderson v. State*, 123 Ga. App. 57 (179 SE2d 286); and see *Mooney v. State*, 243 Ga. 373 (254 SE2d 337). And, the continued search was further authorized by the fruitful development, within the bounds of the consent, of probable cause to believe the coffee can contained contraband. *Williams v. State*, 171 Ga. App. 934 (321 SE2d 429); *Smith v. State*, 160 Ga. App. 690 (287 SE2d 44); *Meneghan v. State*, 132 Ga. App. 380, 382 (208 SE2d 150); see *Medlin v. State*, 168 Ga. App. 551 (309 SE2d 639).

As for appellants' dispute of any facts, the trial court has already determined these issues of fact. On appeal of denial of a motion to suppress, the evidence is construed most favorably to the upholding of the trial court's findings, and they must be adopted unless they are clearly erroneous. *Watson v. State*, supra. They are not so in this case. The trial court did not err in denying the motions to suppress and in admitting the evidence.

2. No harmful error accrued to either appellant by the State's alleged failure to produce the GBI's notes which were allegedly exculpatory in that they noted Arena had said he put the *can* in the trunk, and not that he put the *cocaine* in the trunk, as the agent later testified. The evidence was overwhelming that whether Arena said "can" or "cocaine," he was fully engaged with Dunn in the transport of illegal drugs, including some cocaine found in Arena's vehicle's glove compartment, and, by reasonable deduction, that he knew the can contained cocaine, or was at the very least a party to the crime. We conclude any error probably did not affect the verdict. *Hamilton v. State*, 239 Ga. 72, 77 (235 SE2d 515); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

3. The trial court did not err in denying appellants' motions to sever trial. The evidence was overwhelming that the crimes were committed by both appellants, in collusion; we have analyzed the possibilities of prejudice to one or the other, and do not find that a separate trial would have gained either appellant an advantage of acquittal. The defenses which allegedly could have been asserted are not "mutually exclusive" (*Satterfield v. State*, 256 Ga. 593 (351 SE2d 625)); particularly considering the volume of drugs found and all the circumstances of Dunn's and Arena's trip, the evidence of joint action was overwhelming and any evidence of exculpation was not sufficient to overcome that evidence of guilt and create compelling prejudice. Clearly each appellant would attempt to blame the other, but the fact that such a tactic could be made does not by itself require a severance.

4. The indictment incorrectly charged Dunn with possession of a substance composed of a purity of .10 percent or more of cocaine, that is, one-tenth of a percent of cocaine. Appellant Dunn moved to dismiss the indictment, but the trial court refused and "constructively amended" the indictment before the jury to read "ten percent." We find no error. The error in the indictment was clearly a typographical error or misprint, and did not intend to charge Dunn with trafficking in "one-tenth percent" cocaine. The meaning of the language was clearly meant to reflect "10 percent," pursuant to OCGA § 16-13-31, but its form was in error. Dunn waited until trial to complain of the form of the indictment. This was too late. OCGA § 17-7-113. Demurrers, motions to quash, and pleas in abatement must be entered before trial, or they are waived. *Sheffield v. State*, 235 Ga. 507 (220 SE2d 265). This was obviously a clerical error in an otherwise good indictment. See *Lewis v. State*, 55 Ga. App. 743 (191 SE 278). It was not fatally defective but was easily amendable; therefore, the indictment was not void, and was not subject to an arrest of judgment (see *Curtis v. State*, 102 Ga. App. 790 (118 SE2d 264)), which has not been moved for in any case.

*Judgments affirmed. Deen, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 27, 1990 —
REHEARING DENIED MARCH 15, 1990 —

*Cook & Palmour, Bobby Lee Cook, Jake Arbes*, for appellant (case no. A89A2193).

*Robert A. Harper, Jr., William J. Sheppard*, for appellant (case no. A89A2196).

*Dupont K. Cheney, District Attorney, J. Thomas Durden, Assis-*

*tant District Attorney*, for appellee.