A95A1097. PLESS v. THE STATE.
(462 SE2d 472)

ANDREWS, Judge.

Pless, convicted by a jury of one count of possession of cocaine, OCGA § 16-13-30, appeals from the trial court's denial of his motion for new trial, contending that the court's earlier denial of his motion to suppress the crack pipe found in his pocket and containing cocaine residue was error.

1. " 'In reviewing a trial court's decision on a motion to suppress . . . , our responsibility is to ensure that there was a substantial basis for the decision. In so doing, we may consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing and *that introduced at trial*; we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.' (Citations omitted; emphasis supplied.) *Gray v. State*, 207 Ga. App. 648, 650 (2) (428 SE2d 663) (1993)." *State v. Brodie*, 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995).

So viewing the testimony of Officers Fowler and Kelker at the trial as well as numerous hearings on the case at which either or both testified,[1] the evidence was that Fowler and Kelker were both assigned to the Marietta drug interdiction unit. Their responsibility was to patrol, in uniform and marked cars, areas for which they had reports of recurrent drug activity, i.e., a "hot" area, in an effort to slow or deter such activity. The officers had been patrolling the area of Roosevelt Circle, which had such a reputation. Between 11:30 p.m. on

---

[1] The arrest occurred on February 3, 1994, a probable cause hearing was held on April 20, 1994, a probation revocation hearing on June 8, 1994, and a motion to suppress hearing on June 30, 1994. Trial was conducted on August 29, 1994.

the evening of February 2, 1994 and the officers' encounter with Pless near 1:00 a.m. on February 3, 1994, Officer Kelker had seen Pless twice approach passersby on the street, have hurried conversations while huddled close to the other person, and then depart. Drug deals are usually conducted furtively and quickly, with both participants keeping a lookout for any police activity and scattering at the sight of an officer.

On the third occasion Pless was seen, he was with Hester, a known drug seller. Again, the two men were in close conversation and, when the police car approached them, they appeared startled and quickly broke away from each other and walked in opposite directions. Officers Kelker and Fowler stopped their car and went to investigate. Kelker approached Hester and Fowler called to Pless and told him to come to him. As Fowler testified, "[a]s I called to him, he made a pitching motion with his right hand." In such areas, when approached by officers, it was not uncommon for sellers and users to pitch their contraband. Fowler then did a *Terry* patdown of Pless which revealed no weapons. Fowler handcuffed Pless in order to protect both officers and briefly detain Pless while Fowler went to look for any tossed material approximately 20 to 40 feet away. Fowler took Pless around the patrol car and left him standing close to Officer Kelker who was talking to Hester. Fowler then returned to the spot where he had seen Pless make his pitching motion. In the interim, Kelker had completed his preliminary questioning of Hester and allowed him to leave, since both officers were familiar with him from prior cases and believed they could locate him later if necessary and they did not believe they had any further cause to restrain him.

Officer Fowler found numerous pieces of a white material, cut up or broken to look like pieces of crack cocaine, in the area of Pless' toss. At this point, Officer Kelker testified Fowler indicated he saw something or found something which could be drugs. Kelker then did a full search of Pless' person and found a "crack pipe" made from a car antenna stuffed with a piece of Brillo pad in Pless' front pocket. The pipe contained cocaine residue and was the basis for the charge against Pless. The material found by Fowler was chalk, which drug users sometimes sell to unsuspecting drug purchasers in an effort to get money to fuel their own drug habit.

The court's order denying the motion to suppress found that "Pless was observed loitering at a late hour on February 3, 1994, in a high crime area known for drug activity; and it further appearing that Robert Pless was acting in a suspicious manner with a known drug dealer when the two Marietta Police officers came upon him and that Pless and the drug dealer quickly walked away from each other at the sight of the police; and it also appearing that Pless made a pitching motion with his hand and arm, and that Officer Fowler subsequently

found some cut up pieces of chalk in the area where Pless made the pitching motion; . . ." the motion was denied.

2. There is no question that, at the point where the officers made their initial approach to Pless and Hester, they had "reasonable and articulable suspicion" upon which to initiate the contact based upon their observation of actions consistent with drug activity. *Jones v. State*, 216 Ga. App. 449 (454 SE2d 631) (1995); *Goodman v. State*, 210 Ga. App. 369, 370 (436 SE2d 85) (1993); *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198) (1989); *Hudgins v. State*, 188 Ga. App. 798, 799 (1) (374 SE2d 566) (1988).

The next inquiry is whether, by handcuffing Pless while he continued his investigation, Fowler was required to have probable cause at that moment that would support a full arrest, or was further detention in order to protect the officers justified under *Terry* as a momentary "seizure" which did not rise to the level of an arrest. *State v. Corbett*, 205 Ga. App. 554, 556 (423 SE2d 38) (1992).[2] "*Terry* carefully notes that the limitations placed upon a brief investigatory stop depended on the facts and circumstances. They would have to be developed on a case-by-case basis, with the touchstone being always the reasonableness of the officer's conduct. Noting that the officer remains particularly vulnerable during such a stop precisely *because* a full custodial arrest has not been effected, the officer must make quick decisions as to how to protect himself and others from possible danger. [Cit.] In determining whether an officer's conduct during an investigatory stop was proper, the inquiry is not whether the officer *could* validly have acted similarly but whether under the same circumstances a reasonable officer *would* have done so. [Cit.]" *White v. State*, 208 Ga. App. 885, 888 (2) (432 SE2d 562) (1993).

Here, two officers were investigating two suspects, one a known drug dealer, in a known drug area at 1:00 a.m. In order to complete the investigation, Officer Fowler secured Pless and moved away from the two suspicious men and Officer Kelker to see what had been thrown. Under similar factual circumstances, this Court has found that placing a person in the rear seat of a patrol car which has no interior door handles and from which there is no exit without the officer's opening the door is not an arrest, but a justifiable momentary detention which is reasonable under the circumstances. *Goodman v. State*, supra at 371 (placing drug suspect in back of police car while checking driver's license and waiting for accomplice to return found reasonable); *Corbett*, supra at 556; see *Arena v. State*, 194 Ga. App. 883, 885 (1) (392 SE2d 264) (1990). We see no difference in momenta-

---

[2] A police officer lacking probable cause may momentarily detain a suspicious individual in order to maintain the status quo pending further investigation. Id.

rily handcuffing a suspicious person while leaving him outside the police car. See *White, supra* (suspect handcuffed and placed in back of patrol car and returned to store before probable cause was established, detention found reasonable).

At the point at which the chalk was found, even assuming that the officer knew immediately that it was chalk, the officers had probable cause to believe that Pless was possessing with intent to distribute a "counterfeit substance" in violation of OCGA §§ 16-13-78.2 and 16-13-79.

Therefore, the denial of the motion to suppress was not error, nor was the denial of the motion for new trial on this ground.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

#### DECIDED SEPTEMBER 28, 1995.

*Henderson, Weinberg, Cohen & Hart, Daniel L. Henderson,* for appellant.

*Thomas J. Charron, District Attorney, Bruce D. Hornbuckle, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys,* for appellee.

