## A96A1568. THE STATE v. WINTKER.
### (476 SE2d 835)

BEASLEY, Chief Judge.

The State appeals the trial court's order suppressing a statement made by Wintker to police for failure to give *"Miranda* warnings."

In reviewing such a ruling, factual and credibility determinations will not be disturbed on appeal unless clearly erroneous. *Pless v. State*, 218 Ga. App. 603 (1) (462 SE2d 472) (1995); *State v. Louis*, 185 Ga. App. 529, 530 (364 SE2d 896) (1988). Accordingly, the record shows that Davis was stopped for driving 81 mph in a 55 mph zone. The officer discovered Davis's license was suspended and asked him to exit the car. He was arrested and placed in a patrol car after a pat-down disclosed a drug pipe with marijuana residue.

The officer asked the three passengers for the identity of the car owner, and 18-year-old Abigail Wintker responded that it was her parents' car. When asked for permission to search the car, Wintker refused, and the officer called for a drug dog. Wintker was placed in the back of a patrol car with Davis, the arrested driver, but was told she was not under arrest. The doors of the patrol car were locked and could not be opened from the inside. The other two passengers were allowed to stand near the car while the dog sniffed drugs. The dog "alerted" to all four vehicle doors, so several officers thoroughly searched the interior and found both marijuana and cocaine in a child's yellow suitcase. Other contents revealed that the suitcase belonged to a woman. The officer first asked the woman passenger standing outside if it was hers, and she denied ownership. The officer then asked Wintker, who was still in the back seat of the patrol car and was the only other woman present, if she owned the suitcase. She admitted she did and was arrested for violation of the Georgia Controlled Substances Act, OCGA § 16-13-30. She then asked the officer why she was being arrested, and he informed her that the suitcase contained drugs. She denied knowledge of any such drugs.

After indictment, Wintker moved to suppress all evidence seized from the vehicle on the basis that it was obtained through an illegal search and seizure. She also moved to suppress her statement that

she owned the suitcase on the basis that she was in custody and not advised of her *Miranda* rights before making the statement. The court denied the motion as to the search and seizure, finding the officers had probable cause and reasonable suspicion to search the vehicle, but suppressed Wintker's statement, finding that Wintker was in custody when police questioned her without first advising her of her constitutional rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

If the police take a suspect into custody and ask questions without informing the person of his *Miranda* rights, the responses cannot be introduced into evidence to establish his guilt. *Berkemer v. McCarty*, 468 U. S. 420, 429 (II) (104 SC 3138, 82 LE2d 317) (1984). The United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, supra at 444; see *Shy v. State*, 234 Ga. 816, 819 (I) (218 SE2d 599) (1975). Only statements made by a suspect while in custody and under police interrogation give rise to the issue of *Miranda* warnings. *Tibbs v. State*, 207 Ga. App. 273 (1) (427 SE2d 603) (1993).

In determining whether a suspect was in custody for *Miranda* purposes, "a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there (was) a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' [Cits.]" *Stansbury v. California*, 511 U. S. ___ (II) (114 SC 1526, 128 LE2d 293) (1994). The "ultimate inquiry" is a mixed question of law and fact.

*Thompson v. Keohane*, 516 U. S. ___ (II) (B) (116 SC 457, 133 LE2d 383) (1995), recently reaffirmed that in making this determination, the court must first ascertain the circumstances surrounding the interrogation. This is a purely factual determination and receives deferential review on appeal. Second, given those circumstances, the court then must determine if a reasonable person would have believed he or she was not at liberty to terminate the interrogation and leave. This inquiry "calls for application of the controlling legal standard to the historical facts." Id.

The specific issue in the *Thompson* case was whether a state court's ruling that a defendant was not "in custody" for *Miranda* purposes qualifies as a "fact" determination entitled to a presumption of correctness under 28 USC § 2254 (d), which provides that, in a federal habeas proceeding instituted by a person in custody pursuant to a state court judgment, the state court's determination of "a factual issue" ordinarily "shall be presumed to be correct." The Court's reasoning applies equally to our review of the trial court's findings as to whether a defendant was subjected to custodial interrogation and

thus entitled to the protections afforded by *Miranda*. The trial court's findings on the disputed facts are not clearly erroneous. We review the trial court's "application of the controlling legal standard" to these facts de novo.

A reasonable person test, rather than the four-factor test applied in earlier decisions, applies to determine whether an individual not formally arrested is nevertheless in custody for *Miranda* purposes.[1] This occurs if, but only if, a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. A "reasonable person" has been defined as "one 'neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances.'" *United States v. Corral-Franco*, 848 F2d 536, 540 (5th Cir. 1988), quoting *United States v. Bengivenga*, 845 F2d 593 (5th Cir. 1988), cert. denied, *Bengivenga v. United States*, 488 U. S. 924 (109 SC 306, 102 LE2d 325) (1988).

The State contends Wintker was not in custody and the fact she had been placed in the back seat of a locked patrol car when the police officer asked if she owned the suitcase should not be determinative. Rather, the State argues, we should find she was merely temporarily detained while the investigation was completed.

Police officers making an ordinary traffic stop or arriving on the scene of suspected criminal activity may conduct a "general on-the-scene investigation," including making inquiries solely to determine whether there currently is any danger to them or other persons. *Tibbs*, supra at 273 (1); *Aldridge v. State*, 247 Ga. 142, 144 (2) (274 SE2d 525) (1981). They may even temporarily detain anyone who tries to leave before the preliminary investigation is completed. Such inquiries and detentions do not trigger the requirements of *Miranda*, unless the questioning is "aimed at obtaining information to establish a suspect's guilt." Id.; *Smith v. State*, 264 Ga. 857, 859 (3) (452 SE2d 494) (1995); *State v. Overby*, 249 Ga. 341, 342 (290 SE2d 464) (1982).

The State reminds us that "this court has found that placing a person in the rear seat of a patrol car which has no interior door

---

[1] The earlier test was approved by the Georgia Supreme Court: "In making the distinction between custodial and noncustodial interrogation the U. S. Court of Appeals, 5th Circuit, has outlined several criteria: 'these include probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation.' *Brown v. Beto*, 468 F2d 1284, 1286 (5th Cir. 1972)." *Shy*, supra at 821 (I). The Fifth Circuit Court of Appeals specifically disapproved the four-factor test as "'no longer compatible with Supreme Court precedent,'" and approved a reasonable person test in *United States v. Corral-Franco*, 848 F2d 536, 540 (5th Cir. 1988). The "reasonable person" test is now generally utilized by Georgia courts. See *McClendon v. State*, 201 Ga. App. 262, 263 (1) (a) (410 SE2d 760) (1991) and cases cited therein. But see *State v. Hendrix*, 221 Ga. App. 331, 332 (1) (471 SE2d 277) (1996).

handles and from which there is no exit without the officer's opening the door is not an arrest, but a justifiable momentary detention which is reasonable" in circumstances where police are securing a scene for safety reasons and conducting an investigatory stop. *Pless,* supra at 605 (2) (referring to *Goodman v. State,* 210 Ga. App. 369, 370 (436 SE2d 85) (1993)). See also *State v. Corbett,* 205 Ga. App. 554, 556 (423 SE2d 38) (1992); *Arena v. State,* 194 Ga. App. 883, 885 (1) (392 SE2d 264) (1990); *Alexander v. State,* 166 Ga. App. 233, 235 (2) (303 SE2d 773) (1983).

Although decisions relied on by the State are factually similar to this case, they turn on a different yet related analysis, that is, whether, in detaining a suspect in a locked patrol car, a legal *"Terry-type"* seizure (*Terry v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)) had occurred under the Fourth Amendment. See, e.g., *Goodman,* supra at 370; *Corbett,* supra at 555-556. A policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion," without violating the Fourth Amendment. (Citation and punctuation omitted.) *Berkemer,* supra at 439 (III).

The cited cases do not address the issue of *Miranda*'s procedural safeguards aimed at protecting a suspect's Fifth Amendment rights against self-incrimination. Resolving whether a suspect was in custody for *Miranda* purposes and whether a suspect was legally seized during a *Terry* stop requires somewhat different analyses. In *Terry-*type investigative detentions, the suspect is detained, but *Miranda* is not always triggered. *Shy,* supra at 820 (I). If a motorist detained for a routine traffic stop is thereafter subjected to treatment by police that renders him "in custody," "he will be entitled to the full panoply of protections prescribed by *Miranda." Berkemer,* supra at 440 (III).

The State's emphasis on the lack of arrest is also misplaced, since "in custody" for *Miranda* purposes is broader than "under arrest." See generally *Wilson v. State,* 208 Ga. App. 812, 814 (432 SE2d 211) (1993) (Beasley, P. J., dissenting). Rather, the test as applied to these facts is whether, under the totality of the circumstances, a reasonable person in Wintker's position would feel she was not at liberty to terminate the interrogation and leave. See *Thompson,* supra, 116 SC at 465-467 (II) (B); *Berkemer,* supra at 442 (III).

We agree with the trial court's assessment that Wintker was in custody for *Miranda* purposes at the time she admitted being the owner of the yellow suitcase, and the admission was thus properly suppressed. This episode went far beyond the ordinary traffic stop where *Miranda* warnings need not be given. The question posed by the officer to Wintker — "Is this your suitcase?" — was clearly "aimed

at obtaining information to establish [her] guilt." *Aldridge*, supra at 144 (2). He knew when he asked the question that the suitcase contained contraband, and he had already eliminated one likely owner. A reasonable person in Wintker's position would have believed she was in custody, as evidenced by the totality of circumstances: (1) The 18-year-old suspect had observed the police arrest, handcuff, and place Davis, the driver of her parents' car, in the back seat of the patrol car; (2) she was then separated from the two other passengers, who were permitted to remain standing outside; (3) she was involuntarily confined with Davis in the locked patrol car; (4) she observed a police dog and its handler come to the scene and participate; and (5) she watched as her parents' car was subjected to a thorough search by three police officers after she refused consent to the search.

Wintker's experience falls squarely within a class of cases *Miranda* was particularly concerned with, that is, situations where a suspect is subjected to police interrogation while " 'cut off from the outside world,' because such incommunicado interrogation in a police-dominated atmosphere can result in self-incriminating statements without full warnings of constitutional rights." *Reinhardt v. State*, 263 Ga. 113, 114 (3) (a) (428 SE2d 333) (1993), quoting *Miranda*, supra at 445. Although not occurring in a police station house, Wintker's interrogation was equally isolated and police-dominated; there was a significant "compulsive aspect" to the questioning. *Stansbury*, supra, 114 SC at 1529.

The State's reliance on *Futch v. State*, 145 Ga. App. 485 (243 SE2d 621) (1978), is equally without merit. *Futch* focuses on the custody issue but differs materially in its facts. Futch and her companion were questioned by police in a motel room as to the ownership of a trunk. This Court affirmed the trial court's finding that the police were simply conducting a general on-the-scene investigation when they asked about the trunk, and *Miranda* warnings were not required. Id. at 488 (3). Futch and her companion were inside *their* motel room, not a *police* vehicle, when they were questioned. Compared to Wintker's situation, such an atmosphere does not put a " ' "restraint on freedom of movement" of the degree associated with a formal arrest' [cit.]" such that *Miranda* is triggered. *Wilson*, supra at 218; *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995).

The trial court cited *Woods v. State*, 242 Ga. 277 (248 SE2d 612) (1978), presumably as being factually distinguishable. Woods sought to suppress a statement she made to a detective while she was sitting in the front seat of his car with the passenger door open and her husband present. Id. at 278-279 (2). The Georgia Supreme Court rejected Woods' attempt to suppress these statements on the ground she was the focus of the investigation so as to require that she be read her *Miranda* rights. It held she was not in a sufficiently coercive environ-

ment to trigger *Miranda*. Id. at 281 (2).

*Futch* and *Woods* contrast markedly with the significant deprivation of freedom of action experienced by Wintker. The motion to suppress Wintker's statement was properly granted.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 3, 1996.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Beth T. Golub, Assistant District Attorneys*, for appellant.
*Jack J. Menendez, Monzer J. Mansour*, for appellee.