A97A0708. MANCHESTER v. THE STATE.
(487 SE2d 449)

RUFFIN, Judge.

A jury found Paul Manchester guilty of two counts of armed robbery and one count of possession of a firearm during the commission of a felony. Manchester appeals from the denial of his motion to suppress pretrial statements and his motion for new trial. For reasons which follow, we affirm.

The convictions stemmed from the robbery of a Subway restaurant located in Duluth, Georgia. At approximately 10:30 p.m., a masked individual entered the restaurant, pulled out a gun, and demanded money. The manager gave the individual the money in the cash register, and a customer emptied her purse on the counter. The perpetrator took the money and exited the store.

Four days after the robbery, Manchester appeared at the Gwinnett County Detention Center. Deputy Lana Rutledge, who was working internal security at the detention center, testified that she was asked to report to the detention center lobby because Manchester was turning himself in for committing a crime. She described the lobby as a large, open room with no holding cells, in which people are free to come and go. When Deputy Rutledge arrived, Manchester was sitting in the lobby. Deputy Rutledge asked Manchester for his name and address. Although Manchester gave

her the information, Rutledge could not locate an arrest warrant for him. Rutledge asked Manchester if he was sure there was a warrant for his arrest. According to Rutledge, Manchester responded that "there might not be if nobody knew who did it." Deputy Rutledge told Manchester to "stay where he was," and returned to the front desk to discuss the situation with another deputy.

After speaking with the other deputy, Deputy Rutledge asked Manchester to come over to the front desk with her. When Manchester came to the front desk, Rutledge told him that she was going to ask him some questions. Manchester responded that "'he was reluctant to answer any questions.'" Another deputy explained to Manchester that in order to help him, they had to ascertain whether he committed a crime. In response to questions posed by Deputy Rutledge, Manchester then stated that he robbed the Subway off Peachtree Industrial Boulevard at approximately 11:00 p.m.

Rutledge then accompanied Manchester back to the seating area while the other deputy contacted the Duluth Police Department. According to Rutledge, when they arrived at the seating area, she did not initiate any conversation, but "Manchester volunteered the fact he could prove that he had committed the crime. . . ." Manchester told Rutledge that "he had gotten $280 in the robbery[,] . . . he had used a gun[,] . . . [and he] had a mask on." Manchester was then placed in a holding cell where he waited until investigators from the Duluth Police Department questioned him. Deputy Rutledge testified that Manchester was not in custody until he was placed in the holding cell.

When Duluth Police Department Detectives Logan and Stephens arrived at the detention center approximately one and one-half hours later, they met with Manchester in an interview room. Detective Stephens asked Manchester what he was there for, and Manchester replied "'because of the robbery at Subway' or 'I did the robbery.'" Detective Stephens then read Manchester his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Immediately thereafter, Manchester stated "'you can't use this. I know my rights. You can't use this.'" Detective Stephens proceeded with the questioning during which Manchester periodically repeated the preceding statements. Detective Logan testified that no promises were made to Manchester, that he never requested an attorney, and that he never told the detectives that he wanted to stop the interview.

Manchester moved the trial court to suppress all the statements he made to both the Gwinnett County deputies and the Duluth detectives. The trial court denied the motion with regard to most of the statements, but suppressed Manchester's response to Detective Stephens' first question, which the court found was posed while Manchester was in custody but before he was informed of his

*Miranda* rights.

1. Manchester asserts that his statements to the Gwinnett County deputies should have been suppressed because he was in custody at the time and was not informed of his *Miranda* rights. According to Manchester, he was in custody by virtue of Deputy Rutledge's statement to him to "stay where he was."

"In determining whether a suspect was in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. The ultimate inquiry is a mixed question of law and fact." (Citations and punctuation omitted.) *State v. Wintker*, 223 Ga. App. 65, 66 (476 SE2d 835) (1996). The task of ascertaining the circumstances surrounding the interrogation is a purely factual determination and, on appeal, receives deferential treatment. Id. In this case, although the trial court did not make any findings concerning the surrounding circumstances, those facts are not disputed. Given those circumstances, we must now determine whether "a reasonable person in [Manchester's] position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." Id. at 67. Under this test, we conclude that Manchester was not in custody at the time he was questioned by the Gwinnett deputies and they were not required to inform him of his *Miranda* rights. Moreover, an arrest is not usually effectuated with such a bland command.

We note first that the mere fact that the questioning took place in the detention center does not require a finding that Manchester was in custody. *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984). Neither is such a finding required by Deputy Rutledge's statement to Manchester that he should "stay where he was." See id. at 287. Furthermore, Manchester entered the detention center voluntarily in an effort to surrender to police. His statements to the deputies were not the result of any coercion, but were made in an effort to inform them of the offenses he committed and thereby accomplish his surrender. Cf. *Moses v. State*, 264 Ga. 313, 315 (1) (444 SE2d 767) (1994), citing *Minnesota v. Murphy*, 465 U. S. 420, 433 (104 SC 1136, 79 LE2d 409) (1984), for the proposition that " '[c]ustodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess.' "). The Gwinnett deputies' questioning occurred solely in the detention center lobby where people are generally free to come and go. And, although Deputy Rutledge told Manchester to stay in the lobby area, she did so only because she left the area to discuss the situation with another deputy. Finally, it appears from the circumstances that Manchester had no intention of

leaving the detention center until he accomplished his surrender. There is little else to account for Manchester's unsolicited statement that "he could prove that he had committed the crime. . . ." A reasonable person would not believe he had been arrested under these circumstances. See *Hardeman*, supra; *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995). Accordingly, the trial court did not err in refusing to suppress Manchester's statements to the deputies on this ground.

2. Manchester also asserts that his statement to Deputy Rutledge that " 'he was reluctant to answer any questions' " constituted an equivocal invocation of his right to remain silent, and that upon such invocation, the most the deputies could do was ask questions to clarify the invocation. Manchester argues that even if he was not in custody, the deputies were still required to clarify his intentions. We disagree.

Pretermitting the question of whether Manchester's statement constituted an equivocal invocation of his rights, we find that such requirement would have applied only if Manchester was in actual police custody. In *Miranda*, the Court clearly limited the requirements concerning a defendant's right to remain silent to custodial interrogations. See *Miranda*, supra at 444-445, 473-474; see also *Michigan v. Mosley*, 423 U. S. 96 (96 SC 321, 46 LE2d 313) (1975). We have similarly recognized that " '[o]nly in-custody statements by the accused give rise to the issues of voluntariness and the *Miranda* warnings.' " (Citation omitted.) *Tibbs v. State*, 207 Ga. App. 273 (1) (427 SE2d 603) (1993); see also *Brady v. State*, 259 Ga. 573, 576 (1) (385 SE2d 653) (1989); *Hatcher v. State*, 259 Ga. 274, 275 (2) (379 SE2d 775) (1989). Accordingly, because Manchester was not in police custody at this time, we find no error.

3. In two enumerations of error, Manchester asserts that his custodial statement to the Duluth detectives should have been suppressed. We pretermit resolution of this assertion, however, because we conclude that any error in admitting the statement was harmless. At trial, Duluth Detective Logan's testimony concerning Manchester's custodial statement showed that Manchester admitted to committing the offenses and related some of the details concerning the offenses. Deputy Rutledge, however, related substantially the same facts when she testified concerning Manchester's precustody statements in which he admitted to committing the offenses. Moreover, Deputy Rutledge's testimony concerning Manchester's confession was corroborated by the Subway manager who was working the night of the robbery and the customer in the restaurant at the time. See *Bigham v. State*, 222 Ga. App. 353, 354 (474 SE2d 254) (1996). Because Detective Logan's testimony was merely cumulative of Deputy Rutledge's legally admitted testimony, any error in admitting

evidence of Manchester's custodial statement would have been harmless. See *Tankersley v. State*, 261 Ga. 318, 321 (2) (b) (404 SE2d 564) (1991); *Griffis v. State*, 222 Ga. App. 322, 324 (2) (474 SE2d 119) (1996).

4. Finally, we conclude that the foregoing evidence was sufficient for any rational trier of fact to find Manchester guilty beyond a reasonable doubt of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Bigham*, supra.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 3, 1997.

 Before Judge Clark.

*Shaul, Sheinis & Hudson, Richard N. Sheinis*, for appellant.
*Daniel J. Porter, District Attorney, Ben L. Leutwyler III, Assistant District Attorney*, for appellee.