A03A0049. TAYLOR v. THE STATE.
(576 SE2d 916)

JOHNSON, Presiding Judge.

A jury found Charlie Taylor guilty of aggravated sexual battery and not guilty of battery (family violence). Taylor was sentenced to the mandatory minimum term of ten years in confinement. Taylor appeals, contending the trial court erred in (1) determining that he was not in custody and not entitled to *Miranda* warnings prior to being interrogated, (2) refusing to grant his motion for a new trial,

---

and (3) sentencing him to a cruel and unusual punishment. These arguments lack merit, and we affirm Taylor's conviction.

Viewed in a light most favorable to the verdict, the evidence shows that Taylor arrived at the victim's home and knocked on her door. Taylor and the victim shared a child as a result of a twelve-year extramarital affair, but had not engaged in sexual intercourse with each other for approximately six months. The victim closed the door on Taylor, but Taylor opened the door and came into the apartment. Ignoring the victim's pleas to leave, Taylor grabbed the victim, threw her onto the bed, and tried to loosen her pants. The victim unsuccessfully tried to make Taylor stop, but Taylor "stuck his finger in [her] vagina back and forth real hard." Taylor also put his hand around the victim's throat and pushed her against the closet. He then started punching her in her sides. It was not until the victim agreed to allow Taylor to see their son that Taylor stopped. When Taylor stopped, the victim fled to a neighbor's house and called the police.

The police spoke with the victim and then called Taylor on the telephone. Taylor admitted he had been at the victim's house and told the officer that "things got a little rough." The officer asked Taylor to meet with him, and the two set up a time for later in the evening. Subsequently, Taylor voluntarily drove to the police department to discuss what happened. After the officer told Taylor what the victim had told police, Taylor "acknowledged what she had reported was true, that things did get a little rough." The officer then asked Taylor to put his words or version of the events in writing, and Taylor agreed to do so. Taylor's statement described unzipping the victim's pants after being told to leave and "playing" with the victim's vagina for about a minute after she told him to let her go.

Taylor testified at trial that he and the victim had planned earlier in the day to be intimate and that while they began to get intimate on the victim's bed, she became angry and told Taylor to stop touching her. According to Taylor, he did not fully comprehend that the victim was refusing his sexual advances and kept his finger in her vagina until it was apparent the victim wanted him to stop.

1. Taylor contends that the trial court erred in determining that he was not in custody and not entitled to *Miranda* warnings prior to being interrogated by the police. He argues that the trial court erred in admitting his telephone statement that "things got a little rough," his oral statement to officers at the police station, and his written statement made at the police station.

According to Taylor, since he was the primary focus of the investigation and since police had probable cause to arrest him before he was interviewed at the police station, further questioning was nothing more than "a thinly veiled effort to solicit inculpatory information

useful toward establishing [Taylor's] guilt."[1] In support of this argument, Taylor cites the officer's testimony that he knew he would have to arrest Taylor after Taylor's oral statement, but that the officer still asked Taylor for a written statement without giving him his *Miranda* warnings.

In determining whether a suspect is in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.[2] Here, Taylor was not in custody when the questioning occurred, nor would a reasonable person in Taylor's position have understood the situation to constitute a restraint on his freedom of movement of the degree which the law associates with a formal arrest.[3]

The officer first spoke with Taylor over the telephone, where Taylor admitted things had gotten "a little rough" and agreed to come down to the police station to discuss what happened. Clearly, Taylor was not in custody during this brief telephone conversation. When Taylor arrived at the police station, he was informed that he was not under arrest. Taylor then voluntarily stayed, answered questions asked by the officer, and gave a written statement. Subsequently, Taylor was allowed to leave the police station while police continued to investigate the case.

Custody does not occur because questioning takes place in a building containing jail cells.[4] Custody does not occur because a person is interrogated as the prime suspect in a crime.[5] In addition, custody does not necessarily occur even when police question a suspect after having established probable cause for arrest and with the secret intention of charging the suspect at a future time.[6] In the present case, Taylor came to the police station voluntarily and left when the interview concluded. Although Taylor was indeed a suspect, he was not in custody. The trial court's finding that the noncustodial oral and written statements were voluntary was not clearly erroneous.[7] Moreover, even if it could be argued that Taylor was in custody when he gave his written statement, this written statement was cumulative of Taylor's oral statements to the officers. Since the oral statements

---

[1] *Hadley v. State*, 235 Ga. App. 737, 738 (510 SE2d 569) (1998).

[2] See *State v. Wintker*, 223 Ga. App. 65, 66 (476 SE2d 835) (1996).

[3] See *Manchester v. State*, 226 Ga. App. 653, 655 (1) (487 SE2d 449) (1997).

[4] See *State v. Brannan*, 222 Ga. App. 372, 375 (2) (c) (474 SE2d 267) (1996).

[5] See *Vaughn v. State*, 261 Ga. 686, 687 (2) (410 SE2d 108) (1991).

[6] See *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1998).

[7] See *Hardeman v. State*, 252 Ga. 286, 287-288 (1) (313 SE2d 95) (1984).

were noncustodial and voluntary, any error in admitting Taylor's cumulative written statement was harmless.[8]

2. Taylor contends the trial court abused its discretion in refusing to grant his motion for a new trial. He argues that his motion for a new trial should have been granted on three grounds: (1) his oral and written statements should have been suppressed; (2) the evidence was insufficient to convict him of aggravated sexual battery; and (3) the evidence was sufficiently close to warrant the trial court's exercise of discretion under OCGA § 5-5-21 to order a new trial. We find no merit in these arguments.

The grant or denial of a motion for new trial is a matter within the sound discretion of the trial court and will not be disturbed if there is any evidence to authorize it.[9] A trial court may grant a motion for new trial if, in the exercise of its discretion, it finds that a jury's verdict was against the weight of the evidence.[10] In making this determination, the trial judge sits as a "thirteenth juror" and in "exceptional cases" may grant a new trial.[11] However, the appellate court does not have the same discretion to order new trials as is granted to trial courts in OCGA § 5-5-21.[12] This Court can only review a lower court's refusal to grant a motion for new trial under the standard espoused in *Jackson v. Virginia*[13] to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict.[14]

Viewed in that light, there is more than enough evidence in the present case for a rational trier of fact to find Taylor guilty beyond a reasonable doubt of aggravated sexual battery. As there were no eyewitnesses to the alleged incident, resolution of the issue rested largely upon the testimony of Taylor and the victim. Each presented his or her version of what happened that day, and the jury was allowed to consider the history of the relationship between the two and to consider their conduct before and after the incident. On many points, the victim's and Taylor's versions were in agreement, but on the crucial question of whether Taylor's act of placing his finger inside the victim's vagina was consensual, there was disagreement. After deliberating approximately two and one-half hours, the jury rejected Taylor's version of the events and found him guilty of aggravated sexual battery. It is clear there exists sufficient evidence to support the jury's verdict. In fact, Taylor told the officer that he con-

---

[8] See *Arrington v. State*, 224 Ga. App. 676, 679-680 (3) (b) (482 SE2d 400) (1997).

[9] See *Willis v. State*, 263 Ga. 597, 598 (1) (436 SE2d 204) (1993).

[10] OCGA § 5-5-21.

[11] *Willis*, supra.

[12] Id.

[13] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[14] *Willis*, supra.

tinued to "play" with the victim's vagina for about a minute after she told him to stop. As we found in Division 1, Taylor's oral and written statements were admissible as voluntary, noncustodial statements. This is simply not a case in which "the evidence preponderates heavily against the verdict."[15] The trial court did not err in refusing to grant Taylor's motion for new trial.

3. Taylor maintains that the mandatory minimum sentence of ten years in confinement is cruel and unusual punishment given the circumstances of this case because it (1) makes no measurable contribution to accepted goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering, or (2) is grossly out of proportion to the severity of the crime.[16] Taylor argues that his act of placing his finger in the vagina of his mistress of over ten years, with whom Taylor had a child and with whom Taylor repeatedly had sexual intercourse, was not meant by the legislature to be included under the mandatory minimum sentencing scheme,[17] especially in light of the fact that Taylor had no criminal record. We find no error in the trial court's sentence.

Both the trial court and the state recognized that the ten-year mandatory minimum sentence as applied to Taylor appears severe. According to the trial judge, the court did not disapprove the verdict as lacking sufficient evidentiary support; it merely disapproved the consequences of the verdict under the particular facts and circumstances of the case. In addition, the state conceded that the penalty appears severe, but noted that the legislature has set the parameters of the punishment, and the trial court is bound by those parameters.

Whatever opinion one may hold concerning the harshness of this particular sentence, there is no authority for reducing the sentence. A trial court has no discretion in sentencing someone convicted of the offense of aggravated sexual battery, and the case law is clear that deviation below the minimum requirements of OCGA § 17-10-6.1 (b) results in a void sentence.[18] As the Supreme Court of Georgia has held:

> Traditionally, it is the task of the legislature, not the courts, to define crimes and set the range of sentences. The legislature's choice of sentence is insulated from judicial review unless it is wholly irrational or so grossly disproportionate

---

[15] (Citation and punctuation omitted.) *Ricketts v. Williams*, 242 Ga. 303, 304 (248 SE2d 673) (1978).

[16] *Fleming v. Zant*, 259 Ga. 687, 689 (3) (386 SE2d 339) (1989).

[17] See OCGA § 17-10-6.1.

[18] *Bryant v. State*, 229 Ga. App. 534, 535-536 (1) (494 SE2d 353) (1997).

to the severity of the crime that it constitutes cruel and unusual punishment.[19]

The Supreme Court has already determined that the mandatory sentencing provisions of OCGA § 17-10-6.1 (b) do not constitute cruel and unusual punishment.[20] That being so, the trial court had no authority to do other than what it did in sentencing Taylor to the mandatory minimum punishment of ten years in prison.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED FEBRUARY 5, 2003.

*Althea L. Buafo,* for appellant.

*Kelly R. Burke, District Attorney, Christine M. Cruse, Assistant District Attorney,* for appellee.

---

[19] (Citations omitted.) *Isom v. State,* 261 Ga. 596, 597 (1) (408 SE2d 701) (1991).

[20] *Campbell v. State,* 268 Ga. 44, 45 (1) (485 SE2d 185) (1997).