## 77114. HUDGINS v. THE STATE.
(374 SE2d 566)

Birdsong, Chief Judge.

The appellant, Larry Hudgins, brings this appeal from his conviction of one count of possession of less than one ounce of marijuana, and one count of use of a license plate upon a motorcycle other than the one to which the license plate was assigned. This is a companion case to *Allison v. State*, 188 Ga. App. 460 (373 SE2d 273).

On August 15, 1987, Special Agents Claude Nix, Jerry Scott and Dale Thomason of the Georgia Bureau of Investigation, and Special Agent Pete Conley of the Federal Bureau of Investigation, were monitoring a gathering of the Abate Motorcycle Club at Prater's Mill in Whitfield County. The Sheriff of Whitfield County had requested the assistance of the GBI and the FBI in monitoring this meeting which was expected to have in attendance members of the "Hell's Angels" and "Outlaws" motorcycle clubs. The officers saw three motorcyclists had pulled off to the side of the road approximately one-half mile west of Prater's Mill. The officers pulled over to the side of the road, identified themselves, and asked the motorcyclists if "they were having [any] difficulty." The three individuals, David and Everett Allison, and Larry Hudgins, said they were not. Agent Thomason recognized the Allison brothers as members of the Outlaws motorcycle gang from Knoxville, Tennessee and asked to see their "colors . . . in other words, their leather jackets. They pulled those from their motorcycles and allowed Agent Thomason to look at them." The officers observed a pickax-type handle in a scabbard on the motorcycle driven by Everett Allison and asked for permission to search the persons and motorcycles of the three individuals and Everett Allison responded that he had a pistol under the seat of his motorcycle. Agent Nix removed the concealed weapon, a .38 caliber semi-automatic pistol. Allison was arrested and a search made of his person and his motorcycle. A marijuana cigarette was found in his shirt pocket, and cocaine and LSD tablets were found in his motorcycle bags. David Allison and Larry Hudgins were then patted down for weapons. A pocketknife was found in the pocket of David Allison along with suspected amphetamine tablets. Marijuana was found on appellant Hudgins. Appellant's motion to suppress was denied and his trial before the judge alone resulted in findings of guilty of possession of marijuana and unlawful use of a license plate. He brings this appeal from the trial judge's judgment and sentence. *Held*:

The appellant's notice of appeal cites both offenses, but his enumeration of error complains only of the denial of his motion to suppress. Thus, we will address only the error enumerated and only upon the bases stated: (1) ". . . the police-citizen encounter was not based upon reasonable suspicion," and (2) "the seizure of contraband was a

product of an illegal arrest."

1. This "police-citizen encounter" was precipitated by the brothers Allison and Hudgins stopping their motorcycles alongside the highway leading to Prater's Mill where a motorcycle "club" was having a meeting. Appellant's counsel informed the court in his brief that "Everett Allison had a mechanical problem with his motorcycle prompting the cyclists to leave the roadway and park in an adjacent field. . . ." When the officers saw the cyclists, they stopped to inquire if "they were having [any] difficulty." The cyclists denied having any "difficulty."

County police, including the county sheriff, have general police power to investigate and make arrests (OCGA § 36-8-5) as other law enforcement officials. See generally OCGA §§ 35-8-2 (8); 36-34-2; 36-35-3; *Veit v. State*, 182 Ga. App. 753, 756 (357 SE2d 113). The GBI is charged the obligations of safeguarding the lives and property of the public and investigating suspected violations of the criminal laws of this state. OCGA §§ 35-2-32 (b); 35-3-4 (b). Hence, the GBI and the FBI were warranted in assisting the Whitfield County Sheriff. In short, the GBI and FBI were properly in the execution of their office and were authorized to be at the place where the Allisons and Hudgins parked their motorcycles.

It is in our society's general interest to deter unlawful conduct, and our courts are called upon to balance this public interest against the individual's right under the Fourth Amendment to be free from unreasonable searches and seizures. *United States v. Brignoni-Ponce*, 422 U. S. 873, 878 (95 SC 2574, 45 LE2d 607). The paramount public interest in law enforcement is substantial and justifies a minimal and momentary intrusion, short of seizure of the person, to question an individual about subject matter which has piqued police suspicion. *Radowick v. State*, 145 Ga. App. 231 (1) (244 SE2d 346). Such suspicion must be reasonable and articulable. Id. However, a police officer, as well as all citizens, have the liberty to question other persons. *United States v. Mendenhall*, 446 U. S. 544, 553 (100 SC 1870, 64 LE2d 497). And, the individual questioned has the right to ignore the question and the questioner and walk away. Id. In light of these principles, we examine this "police-citizen encounter."

The appellant and his companions voluntarily stopped at this location. The officers were properly at that location and stopped to offer assistance. We can find no fault with law enforcement officials offering assistance to a stopped motorist, and absent any evidence to the contrary, we will not assign an ulterior or improper motive to an officer inquiring of a stopped motorist if he is having any difficulty. After stopping, the officers observed a "pickax" type handle, in plain view, in the possession of one of the cyclists. Since a "pickax" handle can be used in a manner to classify it as a deadly weapon (see *Miller*

*v. State,* 174 Ga. App. 42, 45 (329 SE2d 252); *Banks v. State,* 169 Ga. App. 571 (314 SE2d 235); and *Beard v. State,* 155 Ga. App. 654 (271 SE2d 906)), the officer could validly question the cyclist as to his possession of such a potential weapon because it piqued his suspicion. It was an articulable and reasonable basis for questioning a person who voluntarily stopped because of his own reason. Hence, there was no illegal "police-citizen encounter" and we find this portion of the enumerated error to be without merit.

2. Remaining in issue is appellant's contention that the seizure of marijuana from his person was the product of his illegal arrest. We do not agree. "[T]he Fourth Amendment in no way prohibits voluntary interaction between citizens and police," and it is " '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' " *Bothwell v. State,* 250 Ga. 573, 576 (300 SE2d 126), U. S. cert. den. 463 U. S. 1210. We have found that the police were authorized to stop and talk to the three cyclists. They were authorized to question one of them as to why he possessed a potentially dangerous weapon when attending this motorcycle club meeting. In addition, our appellate courts have sanctioned the practice of police officers asking a citizen for permission to search. *Bothwell,* supra; *Berry v. State,* 163 Ga. App. 705 (3) (294 SE2d 562). Everett Allison voluntarily stated that he possessed a weapon, and the officer found it was concealed. Allison was then arrested and subjected to a full search of his person and his motorcycle which revealed other drugs. His possession of a deadly weapon justified a patdown for weapons of his companions for the safety of the officers. Cf. *Terry v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889). David Allison was then found to possess suspected amphetamines and was arrested. He also had a concealed pistol. There is no evidence that Hudgins was placed under arrest or his liberty to leave was restrained in any way prior to a patdown for weapons. Even if the officer had asked Hudgins to "stop," and then questioned him, this is not a "seizure" within the meaning of the Fourth Amendment. *Sabel v. State,* 248 Ga. 10 (1) (282 SE2d 61), U. S. cert. den. 454 U. S. 973. There was no arrest of Hudgins prior to the seizure of marijuana from his person. Accordingly, we have found no reversible error upon the grounds enumerated.

*Judgment affirmed. Banke, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment but do not join in all that is written.

Hudgins' patdown was reasonably based on the circumstances, including most importantly that his two companions had already been

found in possession of weapons. The police thus were justified in frisking him in order to secure their own safety from weapons which Hudgins would have immediate access to. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). See an explanation of its rationale in *Michigan v. Long*, 463 U. S. 1032, 1045-1047 (103 SC 3469, 77 LE2d 1201) (1983).

DECIDED OCTOBER 14, 1988.

*Marcus R. Morris*, for appellant.
*Jack O. Partain III, District Attorney, Lee R. Taylor, Assistant District Attorney*, for appellee.