## A95A0680. HODGES v. THE STATE.
(460 SE2d 89)

BEASLEY, Chief Judge.

James Hodges appeals his judgment of conviction and sentence for possession of cocaine (OCGA § 16-13-30 (a)), after a bench trial at which evidence seized by an officer was admitted over objection. He enumerates as error the denial of his motion to suppress it, contending it was found when he was impermissibly detained and unlawfully searched.

An officer received information relayed to him from a 911 emergency call, some of which information was confirmed by his observation and hearing when he arrived at the designated scene. It was about 5:00 in the morning, when it was still dark. The officer knew the area as a public housing project known for the presence of guns and drugs, and he himself had previously responded to calls involving discharge of weapons and aggravated assaults. The information was that two males were being loud and boisterous in the area of Hull and 13th Streets, and one possessed narcotics. He heard the two males, who were distant from one another, as between the apartment buildings. He could see only one of the men, defendant, who was hollering and screaming across the apartment complex. In conducting his investigation, the officer called defendant to him, to check his identification and to find out why he was there, because no one was supposed to be out there at that time of night; even if it was a resident, the person was required to present a resident card. Defendant's identification showed a different residence.

In order to assure his personal safety while investigating, the officer conducted a pat-down search, a frisk. He felt down the front of defendant's pants and around the waistline and asked defendant to turn so he could check the back, doing so because he himself carried his weapon in his back when he was off duty in order to make it less visible. He was not able to actually pat him down in the back because defendant started up, as though to be aggressive or to leave, when the officer tried to place the back of his hand inside the beltline. He described the motion as being like a person tucking a shirt in.

The officer attempted to stop defendant, and another officer who had arrived on the scene helped subdue him and arrested him for obstructing the investigation of the disturbance. When defendant started to "buck up," the officer's suspicion was raised to thinking this was the person the caller said had drugs, and possibly a gun. A search of defendant's pockets, made after the arrest, yielded drug paraphernalia and the drugs for which he was convicted.

As to the environment which the officer entered to investigate the complaint, the court found it to be a high crime, high drug, high violence area, based not only on the officer's testimony but also on the court's own experience in many prior cases as well as general community knowledge. The court concluded that the officer had a right to conduct a pat-down to protect himself because of the dangerous nature of the area he was in, the time of day, the fact he was alone, the fact there was another male involved in the disturbance whom he could not see, the confirmation of some of the anonymous information leading to a stronger belief that the other information, concerning drugs, was accurate. Also, the officer understood the men were not supposed to be out there and that defendant was not even a resident of the project, so as to be on his way to or from home there.

The court found that the officer's actions as described and demonstrated to the court constituted a legitimate pat-down not extending beyond what was necessary to reveal the presence of a weapon by the officer. The Court stated "[It was] a pat-down of the exterior of the pants. And then he wanted to pat down the back belt-line area, and he wanted to draw his hands, his fingertips, as he showed it, under the belt-line area of the waistband of the defendant in order to see if there was anything under the belt-line." The court found that the officer began to put the end of his fingers up under the beltline, on the exterior of the shirt, to feel if there was a weapon secured under the clothing by the belt. These findings are conclusive because there is evidence to support them. *State v. Corley*, 201 Ga. App. 320 (411 SE2d 324) (1991).

1. The first issue is whether the defendant's detention was authorized.

"According to the United States Supreme Court there are three levels of encounter between an individual and the police. The first involves the mere accosting by an officer usually requesting name and identification. There is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment. The second is the '*Terry* type' (*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)) stop involving temporary restraint, a brief 'seizure' which must be supported by articulable suspicion. The third is an actual or

de facto arrest. . . . [Cit.]" *Exposito v. State*, 191 Ga. App. 761, 762 (1) (382 SE2d 412) (1989).

We find that the officer's initial encounter with Hodges was justified as one of the "first type which needed no basis but was sustained by routine police work investigating [the 911 call and] possible . . . violations [of the housing authority's curfew]." Id.

2. The second issue involves the frisks. We agree with the State that the officer was entitled to conduct a pat-down for weapons.

Under *Terry*, "a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. [Cit.]" *Ybarra v. Illinois*, 444 U. S. 85, 93 (100 SC 338, 62 LE2d 238) (1979). "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked. . . ." Id. at 93-94. "Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U. S. 40, 64 (88 SC 1889, 20 LE2d 917) (1968).

The Supreme Court reiterated in *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612) (1972), what it recognized in *Terry*, supra, "that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. . . . The purpose of this limited search is . . . to allow the officer to pursue his investigation without fear of violence. . . . So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Adams*, supra at 146. The question is whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger." *Terry*, supra at 27. He is justified if, from the circumstances, he "reasonably inferred that the individual was armed and dangerous." *Sibron*, supra at 64.

The trial court, as factfinder who observed the defendant and the officer and watched the officer's demonstration of what he did, did not err as a matter of law in concluding that the circumstances in which the officer found himself in this case justified the belief that he was at risk, based on the suspicion that Hodges, who did not belong out in this high violence, high drug housing project at 5:00 a.m. at all and who was hollering to another unseen male, had a weapon. This is

the test, as explained in *Ybarra,* supra.

The final issue is whether the officer was justified in putting his fingers where he did, or whether this exceeded the limits of a frisk and constituted a search without probable cause.

Considering all the circumstances, as we must, we do not conclude that the actions of the officer exceeded the scope of the limited protective search or pat-down or frisk authorized for weapons in this instance. The protective measures taken were reasonable under the circumstances. Not all weapons or other instruments capable of inflicting harm and of being carried at one's back, stuck in a readily retrievable but concealed spot, are detectible from touching a belt around a waist and the exterior of the clothing in the belt's vicinity.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JULY 12, 1995 —

*William F. Sparks,* for appellant.

*Stephen F. Lanier, District Attorney, Lisa W. Pettit, Assistant District Attorney,* for appellee.