A98A1110. CLARK v. THE STATE.
A98A1111. COLEY v. THE STATE.
A98A1112. POLLARD v. THE STATE.
A98A1113. WEBSTER v. THE STATE.

(510 SE2d 319)

POPE, Presiding Judge.

Macon Police Officer David Mullin and Jones County Sheriff's Investigator Jimmy Black worked together on a drug investigation of the American Legends Saloon in Macon. Black told Mullin that an informant had recently been in the bar and seen the bar owners and a bartender in possession of illegal drugs. Based on the information from Black, Mullin filed an affidavit for a warrant to search the saloon for drugs.

Mullin stated in the affidavit: "Investigator Black advised the affiant that he had met with a confidential reliable source within the past seventy two hours this source will here in after be referred to as source #1, who stated the following. Source #1 stated that within seventy two hours prior to the time and date of this affidavit it had been inside the American Legend Saloon, 2455 Emery Highway. Source #1 stated that while at this location he saw both Angie and Jude Webster, the owners of the bar, both in possession of large quantities of Methamphetamine. Source #1 also observed the bartender in possession of cocaine while behind the Bar. Affiant states that Source #1 is familiar with both Methamphetamine and cocaine from past experiences per Investigator Jimmy Black who also states that he has known source #1 for at least three years and that Source #1 has provided information which had led to the arrest of four people for Felony Drug offenses." (Punctuation omitted.)

Based on the affidavit, a magistrate issued a search warrant for the premises of the saloon. Approximately ten officers executed the warrant on a Friday night when there were between twenty-five and forty patrons in the bar. Upon entering the saloon, the police announced their purpose and advised those present that they were going to conduct pat-down searches for weapons. Officer Mullin asked bar owner Jude Webster if he had a gun, and Webster said that he did. Mullin then conducted a pat-down of Webster, found a gun on him and seized it. Another officer asked bar patron Avis Pollard if she had a gun, and after Pollard said she did, the officer frisked her and found the gun on her person. The police also found a gun lying next to John Clark, a customer who was sitting in a booth in the bar. When Clark admitted that the gun was his, an officer frisked him and found a gun magazine in his pocket. Another officer frisked Johnny Coley, a patron in the bar, and felt what he thought were marijuana cigarettes in Coley's pocket. The officer told Mullin of his discovery, and Mullin retrieved two marijuana cigarettes from

Coley's pocket.

Webster, Pollard and Clark were charged with weapons offenses, and Coley was charged with possessing marijuana. They were all represented by the same attorney, and all filed similar motions to suppress the respective items seized from them. They waived a jury trial and stipulated that the evidence presented at the hearing on their motions to suppress would be the same evidence for their trial. After hearing the evidence, the judge denied their motions to suppress. The judge then found Clark guilty of carrying a weapon at a public gathering, Coley guilty of possessing marijuana, Pollard guilty of carrying a concealed weapon and carrying a pistol without a license, and Webster guilty of carrying a weapon at a public gathering.

Clark, Coley, Pollard and Webster jointly appeal from the convictions, challenging the court's denials of their motions to suppress. We affirm the denials as to Clark, Pollard and Webster, but reverse the denial of Coley's motion to suppress.

1. Clark, Coley, Pollard and Webster argue the search warrant was not supported by probable cause because it was based on an unreliable tip. Clark, Coley and Pollard have no standing to challenge the warrant because it was issued solely for the saloon premises in which they, as mere patrons, had no possessory interest or expectation of privacy. See *Cherry v. State*, 230 Ga. App. 443, 445 (2) (496 SE2d 764) (1998); *Bramblett v. State*, 205 Ga. App. 290, 291 (2) (422 SE2d 18) (1992). Webster, however, as the owner of the bar, has standing to challenge the warrant.[1] Even if Clark, Coley and Pollard had standing along with Webster, the argument that the warrant was not supported by probable cause because it was based on an unreliable tip is without merit.

"An informant's tip may provide probable cause only if, under the totality of the circumstances, including consideration of the informant's veracity and basis of knowledge, there is a fair probability that contraband or evidence of a crime will be found in a particular place. At a minimum, an affidavit supporting a search warrant must contain sufficient facts to allow the magistrate to independently gauge the reliability of both the informant and the information." (Citations and punctuation omitted.) *Sawyer v. State*, 227 Ga. App. 493, 494 (2) (489 SE2d 518) (1997).

Here, the affidavit contained the following facts: the information

---

[1] The state's claim that there is no evidence that Webster owns the bar is disingenuous given the fact that the search warrant affidavit relied upon by the state expressly avows that Jude and Angie Webster are the owners of the bar. Moreover, there was testimony that Webster referred to the bar patrons as his clientele, from which one could infer that he owned the bar.

was provided by an informant known by Investigator Black for at least three years; the informant had previously provided reliable information that led to four drug arrests; the informant is familiar with methamphetamine and cocaine; the informant had been in the saloon within the preceding seventy-two hours; and while in the saloon the informant saw the saloon owners in possession of large quantities of methamphetamine and a bartender in possession of cocaine. These facts were sufficient to allow the magistrate to gauge the reliability of the informant and to conclude that there was a fair probability that methamphetamine and cocaine would be found in the saloon.

In *Pitts v. State*, 212 Ga. App. 556 (442 SE2d 797) (1994), this Court held that an affidavit similar to the one in the instant case was sufficient to establish probable cause. In *Pitts*, the affidavit showed that the affiant sheriff received his information from another officer, who told the affiant that within the past ten days a confidential informant had bought drugs from a particular residence and that the informant had given reliable information in the past resulting in drug arrests. In upholding the search warrant for the residence, this Court found that the affidavit was sufficient to demonstrate the informant's reliability because it stated the type of information previously supplied by the informant, the use to which such prior information was put and the elapsed time since the current information was furnished. Id. at 557 (1). Likewise, the affidavit in the instant case contains those same indicia of the informant's reliability. Thus, contrary to the appellants' argument, the magistrate was authorized to find that the affidavit contained reliable information providing probable cause to suspect that drugs would be found in the saloon. See *Kessler v. State*, 221 Ga. App. 368, 370-371 (471 SE2d 313) (1996).

2. Citing *Ybarra v. Illinois*, 444 U. S. 85 (100 SC 338, 62 LE2d 238) (1979), Clark, Coley, Pollard and Webster argue that the officers did not have reasonable suspicion to frisk them for weapons and therefore the evidence found pursuant to the frisks should have been suppressed. We agree that under *Ybarra* the frisk of Coley was improper, but we do not believe that *Ybarra* prohibited the seizures of guns possessed by Clark, Pollard and Webster.

In *Ybarra*, police officers executing a search warrant for drugs at a tavern frisked all of the customers in the tavern, including Ybarra, for weapons. The officer who frisked Ybarra felt a cigarette pack in his pocket. The officer retrieved the pack and found that it contained heroin. The Supreme Court ruled that the pat-down search of Ybarra, who was not named in the warrant, was not a justifiable frisk for weapons under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). "The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dan-

gerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons. [Cits.] When the police entered the Aurora Tap Tavern on March 1, 1976, the lighting was sufficient for them to observe the customers. Upon seeing Ybarra, they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening. . . . In short, the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." (Footnote omitted.) *Ybarra v. Illinois*, 444 U. S. at 92-93.

"The *Terry* case created an exception to the requirement of probable cause, an exception whose 'narrow scope' this Court 'has been careful to maintain.' Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. . . . Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." (Footnote omitted.) *Ybarra v. Illinois*, 444 U. S. at 93-94.

(a) The facts surrounding the search of Coley are remarkably similar to the facts in *Ybarra*. Coley was not named in the search warrant, but was merely a customer in the American Legends Saloon when the police executed the warrant. The officer who frisked Coley testified he did not know Coley, he was not afraid of Coley, Coley's hands were empty, Coley made no motions, and Coley stood completely still during the search. After feeling what he suspected were marijuana cigarettes in Coley's pocket, the officer told Officer Mullin of his suspicions and Mullin removed the marijuana from Coley's pocket.

As in *Ybarra*, the state is unable to articulate any specific fact that justified the officers in suspecting that Coley was armed and dangerous. The state attempts to justify the search of Coley by citing officer testimony that the saloon is known to be a rough place where there are often motorcycle riders who use drugs. Such generalized testimony about the place to be searched, however, does not amount to a particularized suspicion that Coley was armed and dangerous. In fact, there is no testimony that any officer suspected Coley in partic-

ular of being dangerous. On the contrary, as recited above, the officer who frisked Coley testified that he was not afraid of him and that Coley made no movements, dangerous or otherwise. Because the police had no reasonable particularized suspicion that Coley had a weapon, the mere fact that he was on the premises where an authorized narcotics search was taking place did not justify the frisk. Compare *Hodges v. State*, 217 Ga. App. 806, 808-809 (2) (460 SE2d 89) (1995) (officer responding to 911 emergency call involving drug possession had reasonable suspicion that defendant was dangerous because he was in a housing project where he did not belong at 5:00 a.m., the area was known for the presence of guns and drugs, and the defendant was screaming at another unseen male).

Furthermore, the frisk of Coley was not justified by OCGA § 17-5-28, which provides that officers executing a search warrant at a particular place may search any person in the place to protect themselves from attack or to prevent the concealment of things described in the warrant. The police in *Ybarra* relied on an almost identical statute, and the Supreme Court found that it did not justify the frisk in that case. Also, this Court has held that searches pursuant to OCGA § 17-5-28 are valid only if the state can point to particular facts from which the police reasonably inferred that the individual searched was armed and dangerous or was concealing things described in the warrant. See *Benham v. State*, 196 Ga. App. 241, 242-243 (395 SE2d 658) (1990); *Bundy v. State*, 168 Ga. App. 90, 91-92 (308 SE2d 213) (1983). Here, the officer who frisked Coley had no particular reason to suspect that Coley was armed or was concealing items described in the warrant. Compare *McGugan v. State*, 215 Ga. App. 535 (451 SE2d 460) (1994) (pat-down for weapons justified when defendant arrived at drug house in vehicle, refused officer's repeated requests to get out of vehicle, and tried to pull away from officer when he eventually got out of vehicle).[2]

Because the police lacked reasonable suspicion particular to Coley, the weapons pat-down search of him was illegal and the marijuana found pursuant to that illegal frisk should have been suppressed. See *Wyatt v. State*, 151 Ga. App. 207, 208-211 (1) (259 SE2d 199) (1979); *Smith v. State*, 139 Ga. App. 129, 131-134 (2)-(4) (227 SE2d 911) (1976).

(b) The searches of Clark, Pollard and Webster are significantly

---

[2] In addition to noting that investigations of suspects in vehicles are especially fraught with danger to police, the *McGugan* court also reasoned that it is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed. *McGugan v. State*, 215 Ga. App. at 536. In the instant case, as in *Ybarra*, there was no vehicle involved, and although police were executing a search warrant for drugs at the saloon, they had no particularized suspicion that Coley, a mere customer on the premises, was involved in the drug trade.

different from the improper searches of Coley and Ybarra. As to Pollard and Webster, before any pat-down searches the police asked each of them if they had weapons, they both admitted they did have guns in their possession, and thereafter the police frisked them and found weapons. "The [appellants'] voluntary admission of possession of a deadly weapon per se provided for a limited intrusion. . . . Such an intrusion at that point obviously was necessary for the protection of the officers." *Allison v. State*, 188 Ga. App. 460, 462 (373 SE2d 273) (1988) (physical precedent).

(c) As for Clark, the police did not seize a gun from his person; rather, they found a gun which was lying next to him as he sat in a booth and which Clark admitted belonged to him. Thus, contrary to Clark's argument, the gun was not found on him pursuant to a weapons pat-down search, but was found near him in plain view. "A police officer may seize what is in plain sight if, as here, he is in a place where he is constitutionally entitled to be. And where such a plain-view seizure takes place, there is in effect no search at all." (Citations and punctuation omitted.) *Massengale v. State*, 189 Ga. App. 877, 879 (3) (377 SE2d 882) (1989). After finding the gun near Clark, the police had a reasonable suspicion to frisk him for other weapons, and the gun magazine found in his pocket during that frisk was also admissible evidence. See *Hudgins v. State*, 188 Ga. App. 798, 800 (2) (374 SE2d 566) (1988).

Accordingly, the trial court correctly denied the motions to suppress of Clark, Pollard and Webster, and their convictions are affirmed. The court erred, however, in denying the motion to suppress the marijuana seized from Coley pursuant to an illegal pat-down search for weapons. His conviction is therefore reversed.

*Judgments affirmed in Case Nos. A98A1110, A98A1112 and A98A1113. Judgment reversed in Case No. A98A1111. Ruffin, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in Division 1.

As to Division 2, I am compelled to concur because of the limitations on weapon pat-downs pronounced in *Ybarra v. Illinois*, 444 U. S. 85 (100 SC 338, 62 LE2d 238) (1979). The justification for a pat-down of any person must be based on a reasonable belief, tied to what is observed about that particular person, that the person is armed and presently dangerous. Id. at 92-94.[3] Although the Supreme Court gen-

---

[3] "The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons. *Adams v. Williams*, 407 U. S. 143, 146 [(92 SC 1921, 32 LE2d 612) (1972)]; *Terry v. Ohio*, [392 U. S. 1, 21-24, 27 (88 SC 1868, 20

erally instructs that the totality of the circumstances must be taken into account when considering search and seizure questions,[4] these circumstances cannot alone provide the basis for the pat-down. That is, they do not alone legally justify a belief that the person is armed and presently dangerous; although the officer's belief may be real, it is not reasonable legally. The frisk of Coley may have been "supported by a reasonable belief that he was armed and presently dangerous," which is "the predicate to a patdown of a person for weapons,"[5] but it was not a constitutionally acceptable belief because it was not Coley-specific. The environment or setting and activity are insufficient to give rise to a belief because it is not particularized and unique to the person whom the officer wishes to frisk.

Yet it would seem that the circumstances of the execution of the search warrant at the particular place in this case would permit the limited pat-down. They differ from those in *Ybarra*, where the state statute was identical to Georgia's OCGA § 17-5-28. Of course, the statute must be construed in conformity with the Fourth and Fourteenth Amendments; it cannot be construed to allow, more liberally than would the Fourth Amendment, the search of a person on premises being searched. That is clear from *Ybarra*.

The reasonable belief or suspicion that will warrant a frisk must be directed at the person to be frisked and cannot proceed just because he is on premises where an authorized search is in progress. In *Ybarra*, "the State [was] unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." *Ybarra*, 444 U. S. at 93. But that should not mean that the total environment cannot be the foundation for the reasonable belief or suspicion that Coley had a weapon. In *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868; 20 LE2d 889) (1968), the Supreme Court instructed that "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

In this instance about ten officers were involved in execution of the warrant at this "bikers' bar, strictly a biker bar," which was known for the sale of methamphetamine. And of course alcohol was sold there. The police "get numerous complaints from that area on a

---

LE2d 889) (1968)]. . . . [A] law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. . . . The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place."

[4] *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981).

[5] *Ybarra*, supra, 444 U. S. at 92-93.

weekly basis." The location was a high crime area, in which "a lot of the (motorcycle) bike crowd hangs out . . . , a lot of the Meth users, and they're all considered fairly dangerous people on the Methamphetamine."

In preparation for execution for the warrant, which was based on observation that the two owners were in possession of "large quantities of Methamphetamine" and the bartender was "in possession of cocaine," "[e]verybody (i.e., the officers) was advised to be careful of their weapons and just, you know, be on the lookout for violence in general — 'cause it is known to be rather rough in there . . . in that particular bar."

When the police entered, the band was playing, there was a lot of noise, there were a lot of people, and it was crowded and smokey. The police had the band quit and informed everyone why the police were there "and began a patdown for weapons," the reason for which was "[s]trictly for officers' safety." They patted them down because of their knowledge of who was there, and "their appearance [had] a lot to do with it." The testifying officer "probably knew half the people in there." He patted people down, he testified, "for my own safety." Six or seven of the patrons were known to the officer as members of the Iron Cross Motorcycle Gang, including a past president whom the officer knew as "Big George."

The owner admitted having a pistol on him, which was unlicensed. He explained that he carried the weapon because " 'The clientele that I have here, I have to carry a weapon because I carry money on me at all times.' " Coley was a part of the clientele that night.

The officers knew this saloon, as it had been under surveillance for quite some time and they had previously obtained a search warrant for methamphetamine and cocaine for the place but they did not execute it because the club lost its liquor license. So they knew what kind of dangerous situation they were entering. They "did a patdown for weapons for officers' safety." "We did not search anyone other than doing a patdown for weapons until we found a weapon on them (and marijuana on Coley) and placed them under arrest." A testifying officer had met with the owners several times and had been in the bar "many a time." This was a Friday night, when more drug activity is expected, according to police testimony. They found marijuana on the floor, on Coley, in a jacket and on a couple of patrons, although they did not find methamphetamine or cocaine. It could easily have been destroyed before the police got to it.

Clark had a weapon on him, too, and Pollard, a female, admitted having a small pistol in her overalls pocket. Coley did not have a weapon but did have, detectable by touch, what the pat-down officer believed were two marijuana cigarettes in his vest pocket; Coley acknowledged they were his.

All told, the picture differs in significant aspects from that in *Ybarra*, and each case must be judged on its own facts. It is a known fact that guns are often associated with the drug trade.[6] Considering the information the police had and the specific information which formed the basis for the warrant, it would seem reasonable to believe that patrons as well as the owner had weapons. That belief was borne out.

The rationale presented by the State in its appellate brief is logical but must yield to *Ybarra*. In addition, *Bramblett v. State*, 205 Ga. App. 290 (422 SE2d 18) (1992), wherein the Court ruled that the pat-down was authorized under OCGA § 17-5-28, does not assist. Neither does *Brown v. State*, 181 Ga. App. 768, 770 (1) (a) (353 SE2d 572) (1987).

Regardless of the circumstances, the police cannot enter a premises to execute a search warrant and pat everyone down because they are there. Their presence itself, no matter how great a risk to officer safety is posed by the surroundings and activity to which those present are related, is not enough.

DECIDED DECEMBER 3, 1998.

*Mullis, Marshall, Lindley & Powell, Miguel A. Garcia, Jr., Michael H. Cummings II*, for appellants.

*Otis L. Scarbary, Solicitor, Russell B. Mabrey, Jr., Assistant Solicitor*, for appellee.

---

[6] See *McGugan v. State*, 215 Ga. App. 535, 536 (451 SE2d 460) (1994), and cases cited therein.