A97A2126. JENKINS v. THE STATE.
(495 SE2d 647)

RUFFIN, Judge.

A jury found Willie Lee Jenkins, Jr. guilty of five counts of armed robbery and one count of criminal attempt to commit armed robbery. Jenkins appeals, arguing that the trial court erred in denying his motions to suppress his custodial statement and evidence seized during a search of his car. Jenkins also asserts that the evidence was insufficient to convict him of two of the armed robbery counts. For the following reasons, we affirm.

Viewed in a light most favorable to support the verdict, the evidence shows that around midnight on November 14, 1994, Wayne Spence was working as a cashier at the Econo Flash Fina store on Covington Highway in DeKalb County when he was robbed by a man brandishing a knife. Spence stated that the man forced him to the floor and then took money from the cash register. Spence identified Jenkins as the robber in a photographic lineup and at trial.

Another robbery took place at approximately 11:00 p.m. on November 23, 1994, when a man entered the Captain D's restaurant on Wesley Chapel Road in DeKalb County, came around the counter, poked a razor blade into the back of cashier Ethel Carter and demanded that she open the register. The perpetrator took money from the register and left. Carter and another cashier stated that they clearly saw the robber's face. Carter identified Jenkins as the robber in a photographic lineup after the crime. At trial, Carter, pointing to Jenkins, stated "[t]hat might be him, but I'm not sure." She noted that Jenkins' facial hair was different at trial than during the robbery and that he was wearing glasses at trial. The other cashier identified Jenkins at trial, noting that while she was not absolutely sure given the changes in Jenkins' appearance, he looked like the person that committed the crime. Both were certain, however, of their identification at the lineups.

At approximately 4:30 p.m. on November 26, 1994, a third robbery occurred while Pamela Miller was working at Pinckard & Morgan Cleaners on Church Street in Decatur, Georgia. A man entered the business, came around the counter and demanded that she give

him money. According to Miller, she noticed something shiny in his hand and he threatened to cut her. When she opened the register, he took money and ran. She chased after him and a passerby saw the man get into a silver or gray Pontiac Fiero and drive off. The passerby took down the Fiero's tag number. Miller said that she got a good look at the robber and was very sure of her identification of Jenkins in a photographic lineup. Miller also identified Jenkins as the robber at trial, stating that he looked like the man who robbed her.

Three days later, on November 29, 1994, a man robbed the Krystal restaurant on Candler Road in DeKalb County at approximately 5:30 p.m. Gloria Thomas, the Krystal shift manager, testified that she was behind the counter when a man entered the restaurant, hopped over the counter, poked her in the side with a knife-like object and ordered her to open the cash register. The man grabbed money from the register and left. Thomas identified Jenkins as the robber in a photographic lineup and at trial. Another Krystal employee who was working at the time also identified Jenkins in a photo lineup and at trial. The second employee stated that she saw Jenkins leave the restaurant in a white Pontiac Fiero.

At approximately 9:44 p.m. that same evening, Anita Grier was working at Big Lots department store on Snapfinger Woods Drive in DeKalb County as a cashier when a man approached her check-out aisle, grabbed her arm and told her that he would cut her if she did not open the register. Grier noted that the man had a boxcutter in his hand. When Grier would not open the register and the robber could not get the register open after hitting it with his fist, he ran out of the store. She identified Jenkins at trial and in a photographic lineup the day after the attempted robbery.

Approximately 15 minutes after Grier's encounter with Jenkins, June Truitt was robbed while working at a Long John Silver's restaurant on Wesley Chapel Road, also in DeKalb County. Truitt testified that a man entered the restaurant, jumped over the counter, brandished a razor blade and said that he would cut her if she did not open the register. After taking money from the register, he ran out the door. The robber was seen leaving in a gray Fiero. Truitt identified Jenkins as the robber both in a photographic lineup and at trial.

At approximately 12:20 a.m. on November 30, 1994, a couple of hours after the robbery at Long John Silver's, an off-duty police officer spotted Jenkins driving a car matching the description of the vehicle involved in the earlier armed robberies. However, it did not have a license plate. The officer radioed in the sighting and DeKalb County Police Officer Perry Hilton responded. When Hilton arrived, Jenkins had parked the car in front of a Kroger grocery store. Hilton approached Jenkins, advised Jenkins that his vehicle matched the description of a car used in several robberies, and asked Jenkins for

his consent to search the car for evidence, including the weapon used in the robberies. Jenkins consented, and a subsequent search yielded a razor blade. Jenkins was then placed under arrest and charged with armed robbery. According to Officer Hilton, Jenkins was coherent, appeared to understand what Hilton was saying, and did not appear to be under the influence of drugs or alcohol.

After the arrest, Detective D. A. Lillard of the DeKalb County Police Department spoke with Jenkins and obtained a statement. According to Lillard, Jenkins said he had been smoking crack during the evening of November 29, 1994, and that while he does not remember the crimes, he probably did all the things with which the police were charging him. Lillard testified that Jenkins did not appear under the influence of alcohol or drugs when he gave the statement. Furthermore, Lillard found Jenkins to be coherent and that he appeared to understand everything Lillard was saying. Nothing regarding Jenkins' demeanor or actions prompted Lillard to question Jenkins' mental state.

Jenkins moved to suppress his custodial statement and evidence seized during the search of the Fiero. At the suppression hearing, Jenkins asserted that he could not have consented to the search nor could he have given a voluntary statement to police because he was experiencing visual and auditory hallucinations of his dead relatives prompting him to consent to the search and to give a statement. A caseworker employed by DeKalb County Clifton Springs Mental Health Center testified that she had worked with Jenkins and that he suffered from a seizure disorder along with a psychotic disorder that caused him to experience hallucinations. The trial court denied the motions to suppress, finding that Jenkins was capable of understanding and waiving his rights at the time of the search and the statement.

At trial, Jenkins denied committing any of the crimes. Instead of pursuing an insanity defense, Jenkins argued that his brother committed the crimes. Jenkins testified that at the time of the robberies his brother, who looked like Jenkins, was in Atlanta and had access to Jenkins' Fiero. Jenkins and his wife testified that Jenkins' brother was depicted in surveillance videos of the Big Lots attempted robbery and the Long John Silver's robbery. However, Jenkins presented no evidence regarding his whereabouts at the time of the first three robberies.

1. Jenkins asserts that the trial court erred in denying his motions to suppress. "In reviewing a trial court's decision on a motion to suppress, its findings will not be disturbed if there is any evidence to support them; all relevant evidence of record, including evidence introduced at trial, as well as evidence introduced at the motion to suppress hearing, may be considered. [Cits.]" *Hill v. State*, 224 Ga.

App. 208 (480 SE2d 256) (1997). Furthermore, we "must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous." (Punctuation omitted.) *Pless v. State*, 218 Ga. App. 603 (1) (462 SE2d 472) (1995).

Despite Jenkins' testimony that his deceased grandmother advised him to consent to the search of the car he further testified that he understood that Officer Hilton wanted to search the car and that the hallucination of his grandmother was not forcing him to consent, but was merely suggesting that he consent. Additionally, though Jenkins claimed his deceased relatives advised him to make the custodial statement, he testified that he wanted to tell the police the truth and in fact did tell them the truth.

Detective Lillard and Officer Hilton testified that Jenkins did not appear to be hallucinating, but was coherent and understood the questions asked of him. Additionally, a forensic psychiatrist who examined Jenkins pursuant to a court order testified that Jenkins was probably competent when he was arrested and provided the statement. He added that Jenkins was not suffering from a delusional compulsion at the time of the crimes, but rather was responsible for and aware of the consequences of his actions. Finally, while Jenkins' caseworker testified about the disorders under which he suffered, she further said that she never recommended that Jenkins be committed to a mental institution.

"Even an insane person is responsible for his conduct during lucid intervals. [Cit.]" *Starr v. State*, 134 Ga. App. 149, 150 (2) (213 SE2d 531) (1975). Jenkins has not shown that he was insane or that he was not lucid when he consented to the search and provided his statement. Accordingly, in light of this evidence, the trial court did not clearly err in denying Jenkins' motions to suppress based on his claim that he was mentally incapable of consenting to a search of his car or knowingly and voluntarily providing a statement to police. *Pless*, supra; *Hill*, supra.

2. We next turn to Jenkins' assertion that the evidence was insufficient to convict him of two of the robberies. " 'On appeal of a criminal conviction, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Cit.] 'The determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury. (Cit.)' [Cit.] 'This court determines the sufficiency of the evidence, and does not weigh the evidence or determine witness credibility.' [Cits.]" (Punctuation and emphasis omitted.) *Gray v. State*, 213 Ga. App. 507, 509 (1) (445 SE2d 328) (1994).

We conclude the evidence was sufficient to convict Jenkins of the

Captain D's robbery. Two Captain D's employees identified him in a photographic lineup and at trial. While the employees were less sure of their in-court identification than of their pretrial identification due to the change in Jenkins' physical appearance, this went to the credibility of the witnesses, which was within the exclusive province of the jury. See *Gray*, supra. In light of all the evidence, including the similarity of the crime with the other robberies, the witnesses' identification of Jenkins in photographic lineups, Jenkins' voluntary statement, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Gray*, supra; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Hight v. State*, 221 Ga. App. 574 (1) (472 SE2d 113) (1996) (victim's testimony that defendants' characteristics matched characteristics of burglar fleeing his house, combined with other circumstantial evidence, supported conviction).

We also conclude that the evidence was sufficient to support Jenkins' conviction for the Pinckard & Morgan Cleaners robbery. While Miller was not as certain of her in-court identification as she was of her pretrial identification, this went to the jury's assessment of the witness' credibility and the weight the jurors placed on her testimony. *Gray*, supra. Moreover, the in-court identification was not the sole means to prove Jenkins' guilt. *Price v. State*, 204 Ga. App. 288 (419 SE2d 126) (1992). The evidence of Miller's identification of Jenkins in the pretrial lineup, Jenkins' departure from the scene of the crime in his Pontiac Fiero which was involved in some of the other crimes and the similarity between the manner in which he committed the crime compared to the other robberies supported the conviction. In light of all the evidence, weighed in favor of the jury's verdict, we conclude that a rational trier of fact could have found Jenkins guilty beyond a reasonable doubt of the crime. *Gray*, supra; *Jackson*, supra.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JANUARY 14, 1998.

*Devon A. Orland*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Robert M. Coker, Benjamin M. First, Assistant District Attorneys*, for appellee.