## A01A0616. PETROSKI v. THE STATE.
### (548 SE2d 14)

BLACKBURN, Chief Judge.

Following a jury trial, Fred Ronald Petroski appeals his convictions of kidnapping and theft by taking a motor vehicle. Petroski contends that the evidence was insufficient to support his conviction for kidnapping and that the trial court erred by allowing the introduction of his statement. For the reasons set forth below, Petroski's convictions are affirmed.

1. In his first enumeration of error, Petroski asserts that the evidence was insufficient to support his conviction of kidnapping because there was no evidence that he intended to kidnap the victim.

> On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence. We determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*[1] and do not weigh the evidence or determine witness credibility. Conflicts in the evidence are for the jury to resolve.

(Footnotes omitted.) *Scott v. State.*[2]

In the present case, the evidence reveals that Petroski took William Hockaday's black extended cab 1997 Dodge Ram truck from in front of a Chevron Food Mart. The truck engine was running and the doors were unlocked when Petroski got into the truck and drove away. In the backseat of the truck's cab, Hockaday's 14-month-old son was sleeping in his car seat. The baby's feet and ankles were two to three inches from the rear of the center console. Hockaday testified that if Petroski looked out the passenger window, he would have seen the baby. After driving approximately five miles from the food mart, Petroski left the baby on the steps of a church. Petroski had passed a Publix shopping center, a McDonald's restaurant, and a fire station before leaving the baby in a more secluded area.

Pursuant to OCGA § 16-5-40 (a), "[a] person commits the offense

---

[1] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Scott v. State,* 242 Ga. App. 553 (530 SE2d 257) (2000).

of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." "[A]ny unlawful asportation, however slight, is sufficient to support a kidnapping conviction." *Chambley v. State.*[3] See also *Williams v. State.*[4] Additionally, the fact that the baby was asleep does not render his abduction voluntary. See *Rower v. State.*[5]

Petroski's intent to take the baby need not have been formed prior to taking the truck, but could have been formed upon realizing the baby was present and not stopping immediately. See *Raulerson v. State.*[6] Under the facts of this case, the jury was authorized to find that Petroski took the baby to a secluded spot after he was aware of his presence in order to further his criminal act of stealing the truck.

2. In Petroski's second enumeration of error, he contends that the trial court improperly allowed the introduction of his custodial statement.

> The burden is on the prosecution to show the voluntariness of a custodial statement by a preponderance of the evidence. Factual and credibility determinations of this sort made after a *Jackson-Denno* voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous.

(Footnotes omitted.) *Hammett v. State.*[7]

During the *Jackson-Denno* hearing, the officer testified that he placed Petroski under arrest after a domestic call from someone at Petroski's ex-wife's house. Another officer read Petroski his *Miranda* rights. Petroski stated that he did not want to make a statement at that time and that he wanted to think about it. The officer left Petroski in the patrol car and began interviewing witnesses regarding the domestic dispute. Within ten minutes, the officer who was stationed at the patrol car informed the other officers that Petroski wanted to make a statement.

Upon approaching Petroski, the officers asked if there was something Petroski wanted to tell them. Petroski admitted stealing Hockaday's truck and informed them where it was located. Petroski also stated that he was not aware the baby was in the truck at the time he took it and when he saw the baby he panicked because he did not want to be charged with kidnapping. Petroski asked if the officers

---

[3] *Chambley v. State*, 163 Ga. App. 502, 504 (1) (295 SE2d 166) (1982).
[4] *Williams v. State*, 178 Ga. App. 581, 592 (12) (344 SE2d 247) (1986).
[5] *Rower v. State*, 219 Ga. App. 865, 870 (3) (466 SE2d 897) (1996).
[6] *Raulerson v. State*, 268 Ga. 623, 632 (12) (491 SE2d 791) (1997).
[7] *Hammett v. State*, 246 Ga. App. 287, 288 (1) (539 SE2d 193) (2000).

could help him out, but the officers did not respond to the request.

Under these facts, the trial court was not clearly erroneous in determining that Petroski initiated the renewed conversation. See *Snoke v. State.*[8] Additionally, the officers were not required to remind Petroski of his *Miranda* rights because of the short time span between the initial giving of the rights and Petroski's statements. *Rhodes v. State.*[9] And finally, the officer's testimony that another officer read the *Miranda* rights to Petroski is not hearsay. "Assuming that the proof is limited to merely showing that the statement was made and not as evidence of the truth of the fact asserted in the statement, the statement is admissible as original evidence and does not concern the hearsay rule." (Punctuation omitted.) *Walker v. State.*[10]

The trial court did not err in allowing Petroski's statement into evidence.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED MARCH 28, 2001 — 

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer,* for appellant.

*Daniel J. Porter, District Attorney, James M. Cavin, Assistant District Attorney,* for appellee.

---

[8] *Snoke v. State,* 237 Ga. App. 686, 689 (4) (516 SE2d 541) (1999).

[9] *Rhodes v. State,* 200 Ga. App. 193, 195-196 (3) (407 SE2d 442) (1991).

[10] *Walker v. State,* 187 Ga. App. 631, 633 (1) (371 SE2d 199) (1988).