A03A0374. ATTAWAY v. THE STATE.
A03A0375. MARTINEZ v. THE STATE.
(578 SE2d 529)

BLACKBURN, Presiding Judge.

Following a jury trial, Grady Attaway and Moises Martinez ("defendants") appeal their multiple convictions in these related

cases regarding a crime spree occurring over several days.[1] Attaway appeals his convictions for kidnapping, burglary, armed robbery, terroristic threats, hijacking a motor vehicle, possession of a firearm during commission of a crime, theft by taking, theft by receiving stolen property, driving without a license, fleeing and attempting to elude a police officer, and driving on the wrong side of the road. Martinez appeals his convictions for kidnapping, burglary, armed robbery, terroristic threats, hijacking a motor vehicle, possession of a firearm during commission of a crime, financial transaction card fraud, theft by taking, and theft by receiving stolen property. Collectively, Attaway and Martinez contend that: (1) the evidence was insufficient to support the verdicts; (2) their trials should have been severed; (3) a shotgun used during the crime spree was improperly admitted into evidence; (4) photographic lineups were admitted into evidence without a proper foundation; (5) an incriminating statement made by Attaway after his arrest was improperly admitted; and (6) a mistrial should have been declared due to certain jury misconduct. In addition to these collective enumerations, Martinez, individually, also contends that: (7) his character was improperly placed into evidence; (8) certain exhibits offered by the State were admitted without a proper foundation; and (9) a statement made by Martinez to police was improperly admitted. For the reasons set forth below, we affirm.

1. The defendants contend that the evidence was insufficient to support the verdicts against them. We disagree.

> [T]he evidence must be viewed in the light most favorable to the verdict[s], and the appellant[s] . . . no longer enjoy[ ] the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] . . . As long as there is some competent evidence . . . to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Grier v. State*.[3]

Viewing the evidence in this light, the record shows that defendants were involved in a crime spree over several days in November

---

[1] Defendants were indicted for these crimes along with Jermayne Patterson who was tried separately and is not a party to this appeal.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Grier v. State*, 218 Ga. App. 637, 638 (1) (463 SE2d 130) (1995).

1999. Each of the acts involved in this criminal spree will be considered separately.

(a) On or about November 11, 1999, Deborah Coney returned home at approximately 11:00 p.m. As she opened the gate to her home, Martinez exited a car parked across the street, approached Coney, and held a handgun to her head. At that time, Attaway, wearing a red cap, ran around the corner with a shotgun. The assailants forced Coney into her house, and they immediately confronted Coney's daughter, Brandi. Martinez put the handgun in Brandi's face and threatened to kill her unless Coney gave them money. Attaway and Martinez then ransacked Coney's house, taking VCRs, videotapes, and Coney's ATM card. They also forced Coney, at gunpoint, to give them the rings that she was presently wearing. The defendants threatened to kill Coney and her daughter if she did not give them the correct pin number for the ATM card. The defendants then tied up Coney and her daughter with phone cords and locked them in the bathroom.

The defendants then fled, taking Coney's car with them. Shortly thereafter, Coney's stolen ATM card was used to remove money from her account. When the police located Coney's stolen vehicle, it contained a red cap. Both Coney and her daughter positively identified Attaway and Martinez as their assailants.

On or about November 10, 1999, Sara Cannon left a shopping mall to find that her 1983 Oldsmobile had been stolen. The following day, Deputy Sheriff Daniel Carrier spotted the stolen car being driven in an erratic manner. Deputy Carrier attempted to stop the car and its occupants, but both the passenger and the driver jumped out of the car while it was still moving. Deputy Carrier was not able to catch the occupants, and he was not able to positively identify them. When Deputy Carrier examined the stolen vehicle, he found that it contained, among other things, the shotgun and handgun previously used in the Coney burglary, a receipt showing that Martinez had paid a probation fine on November 8, 1999, and several items taken during the Coney burglary.

This evidence was more than ample to support the defendants' convictions for the crimes committed against Coney and her daughter. And, although the defendants challenge the veracity and accuracy of the victims' identifications, "[t]he determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury." (Punctuation omitted.) *Jenkins v. State*.[4]

---

[4] *Jenkins v. State*, 230 Ga. App. 166, 169 (2) (495 SE2d 647) (1998).

(b) On November 18, 1999, Ernest Cartwright, Jr. was delivering a pizza to a residence. When Cartwright returned to his car, he noticed someone crouched behind it. Martinez then approached him with a handgun with a laser sight on it and demanded money. Martinez and an accomplice whom Cartwright could not identify then stole his wallet, his Starter jacket, cash, and other items. Cartwright's stolen ATM card was used to remove money from his account. Martinez admitted his participation in this robbery in a statement made to police. At trial, Cartwright positively identified Martinez.

This evidence was sufficient to support the jury's determination that Martinez committed the crimes he was accused of against Cartwright.[5] Again, Martinez's contention that Cartwright's identification is inaccurate is a meritless argument. See *Jackson*, supra.

(c) On November 16, 1999, Terrondence Brown discovered that someone was trying to steal his mother's car. As Brown approached the Cadillac owned by his mother, it slowed down, and one of the thieves pointed a handgun with a red laser sight at him. At that point, Brown stopped his pursuit.

A few nights later, on November 19, 1999, Theodore Hudson was informed by a friend that someone was stealing his Pontiac. Hudson gave chase in another car, and he observed that the Cadillac stolen from Brown was traveling along with his stolen Pontiac. Both the Cadillac and the Pontiac eluded Hudson.

Early the next morning, Deputy Sheriff William Crosby observed both cars parked at a gas station. Deputy Crosby pulled into the parking lot and told Martinez, who was a passenger in the Pontiac, that he needed to talk to him. The stolen Pontiac then sped off. Martinez later jumped out of the car as it was moving and ran away. In a statement to police, Martinez admitted to participating in the theft of the Pontiac and admitted knowledge that the Cadillac had been stolen. Deputy Crosby continued pursuit of the Pontiac, which eventually crashed. Following the crash, Attaway, who had no driver's license, was identified as the driver of the car. The stolen Cadillac, which was being driven by a co-defendant of Attaway and Martinez who was tried separately, was also stopped and detained. The handgun with the laser sight and Cartwright's Starter jacket were found in the Cadillac.

Again, this evidence supports the defendants' corresponding convictions. See *Jackson*, supra.

2. The defendants contend that the trial court abused its discretion by denying their motions to sever their trials. The trial court

---

[5] Attaway was not convicted of any crimes committed against Cartwright.

must consider three factors in determining whether to grant a motion to sever:

> (1) whether the number of defendants will create confusion as to the evidence and the law applicable to each, (2) whether there is a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions, or whether the strength of the evidence against one defendant will engulf the other with a "spillover" effect, and (3) whether the defendants' defenses are antagonistic to each other or to each other's rights. The burden is on the defendant requesting a severance of trials to make a clear showing of prejudice and [a consequent] denial of due process.

(Citations omitted.) *Stephens v. State.*[6]

The defendants have failed to shoulder that burden here. "[The defendants] failed to make a clear showing of prejudice and a denial of due process protection." *Callendar v. State.*[7]

Furthermore,

> *Anderson v. State*[8] held that where the counts are based on a series of acts connected together or constituting parts of a single scheme or plan, the trial court could properly deny severance based on the interests of justice. Other cases have held that where the evidence of one crime would be admissible as a similar transaction in the trial of the other crime, or where the similarity of the offenses manifests a pattern, the trial court does not abuse its discretion in denying the motion for severance. Id. (similar transaction); *Samples v. State*[9] (pattern). Thus, the trial court may deny a motion to sever where the offenses involve an ongoing scheme involving the same type of crime against the same victim. *Singleton v. State.*[10]

*Bolton v. State.*[11]

3. The defendants contend that the trial court erred by admitting a shotgun used in the crime spree into evidence without establishing

---

[6] *Stephens v. State*, 245 Ga. App. 823, 827 (8) (538 SE2d 882) (2000).

[7] *Callendar v. State*, 275 Ga. 115, 116 (2) (561 SE2d 113) (2002).

[8] *Anderson v. State*, 236 Ga. App. 679, 680 (1) (513 SE2d 235) (1999).

[9] *Samples v. State*, 217 Ga. App. 509 (1) (460 SE2d 795) (1995).

[10] *Singleton v. State*, 240 Ga. App. 240 (2) (522 SE2d 734) (1999), vacated on other grounds, 243 Ga. App. 429 (533 SE2d 457) (2000).

[11] *Bolton v. State*, 258 Ga. App. 581, 582 (1) (574 SE2d 659) (2002).

an appropriate chain of custody. However, "[t]he State was not required to prove a chain of custody of the exhibit, since the gun was a distinct and recognizable physical object which could be identified upon mere observation. *Ramey v. State*."[12] *Duke v. State*.[13] During her testimony, Coney positively identified the shotgun as the same one that was used during her robbery. Therefore, this enumeration lacks merit.

4. The defendants contend that their photographic lineups were admitted into evidence without authentication and a proper foundation. With regard to authentication, Coney affirmatively identified the lineups in question as the ones she had been shown by police. As distinct, physical objects, the lineups were, therefore, properly authenticated. With regard to foundation, the defendants now argue that there was no showing that the lineups were not unduly suggestive. Pretermitting the efficacy of this argument, "even where a pretrial identification has been found to be tainted, a subsequent in-court identification is admissible if it does not depend on the prior, tainted identification but has some other, independent basis." *Tiller v. State*.[14] Here, Coney testified that, during the burglary, she had almost 30 minutes to study the faces of the defendants, and it was on the basis of that observation that she identified them both in the lineups and at trial. This enumeration lacks merit.

5. The defendants contend that the trial court erred by admitting certain incriminating statements made by Attaway. After being arrested and informed of *Miranda* rights, Attaway requested a lawyer, and Investigator Calvin Chew appropriately terminated his interview with Attaway at that time. As Attaway was leaving the interview room, he voluntarily stopped and asked Investigator Chew what type of weapons had been used in the crime. Investigator Chew told him that a handgun and a shotgun had been used, and Attaway stated: "Ain't this the one with the stolen car that the police chased and two guys jumped out of the car and the guns were found in the car. . . . I don't fit the description of them."

"The burden is on the prosecution to show the voluntariness of a custodial statement by a preponderance of the evidence. Factual and credibility determinations of this sort made after a *Jackson-Denno* voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous." (Footnote omitted.) *Hammett v. State*.[15] In addition, "[t]he question of whether a post-*Miranda* custodial statement is admissible depends on whether, under the

---

[12] *Ramey v. State*, 238 Ga. 111, 113 (4) (230 SE2d 891) (1976).
[13] *Duke v. State*, 176 Ga. App. 125, 127 (2) (335 SE2d 400) (1985).
[14] *Tiller v. State*, 222 Ga. App. 840, 841 (476 SE2d 591) (1996).
[15] *Hammett v. State*, 246 Ga. App. 287, 288 (1) (539 SE2d 193) (2000).

totality of the circumstances, there was a knowing and voluntary waiver of rights." (Punctuation omitted.) *Wells v. State.*[16]

In this case, it is clear that Attaway's statements were not made in violation of *Miranda.* Following *Miranda,* Attaway freely and voluntarily initiated a renewed conversation with Investigator Chew, and, as such, his statement was admissible, as the trial court determined. See *Petroski v. State.*[17]

6. The defendants contend that the trial court erred by denying their motion for a mistrial regarding misconduct by a juror. During a trial recess, one of the jurors was witnessed hugging Brown, one of the victims in the case. This juror, upon questioning, admitted that she knew Brown and that he told her that the defendants had stolen his car. The trial court excused this juror, replaced her, and then offered to allow defense counsel to interview the remaining jurors on an individual basis to determine whether they had been influenced by her. Defense counsel rejected this offer. In light of this refusal, there is absolutely no evidence of record that the isolated interaction of a single juror affected the other jurors in any way, and there is no evidence that the trial court's curative actions were not sufficient in protecting the defendants from any harm which may have been caused by the situation. Therefore, we cannot say that the trial court abused its discretion in denying the defendants' motions for a mistrial. *Speed v. State.*[18]

7. Martinez, individually, contends that the trial court erred by allowing his probation officer to place his character in evidence by identifying a receipt for a fine payment found in Cannon's stolen car. However, "[e]vidence that is otherwise relevant or material to the issues in a criminal case does not become inadmissible simply because it concerns separate offenses, or because it incidentally puts a criminal defendant's character or reputation in evidence." (Punctuation omitted.) *Hayward v. State.*[19] In this case, the probation officer verified the accuracy of the receipt, which directly linked Martinez to the crime spree. This evidence was relevant and properly admitted.

8. Martinez, individually, contends that the trial court erred by admitting both a handgun with a laser sight used in the crime spree and the identification form used in connection with his photographic lineup, contending that they were not preceded by an appropriate foundation and authentication. This enumeration is patently erroneous, as witnesses clearly identified these distinct objects before they were admitted. See Division 3, supra.

---

[16] *Wells v. State,* 237 Ga. App. 109, 112 (3) (514 SE2d 245) (1999).

[17] *Petroski v. State,* 248 Ga. App. 804 (548 SE2d 14) (2001).

[18] *Speed v. State,* 270 Ga. 688, 694 (26) (512 SE2d 896) (1999).

[19] *Hayward v. State,* 258 Ga. App. 566-567 (1) (a) (574 SE2d 646) (2002).

9. Martinez, individually, contends that the trial court erred by admitting a certain post-*Miranda* statement made by him in which he confessed to some of the crimes in issue here. Martinez's only argument is that the investigator lied when he testified that he did not coerce Martinez into making the statement. After reviewing the record, we cannot find any abuse of the trial court's determination that the investigator's testimony was credible. *Hammett*, supra. This enumeration; therefore, has no merit.

*Judgments affirmed. Ellington and Phipps, JJ., concur.*

DECIDED FEBRUARY 24, 2003.

*Ellis R. Garnett*, for appellants.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.