**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 18, 2013**

# In the Court of Appeals of Georgia

A12A2178. TELA v. THE STATE.

MᴄMɪʟʟɪᴀɴ, Judge.

Beniam Dawit Tela appeals the trial court's denial of his motion for new trial after he was convicted by a jury of six counts of aggravated assault,[1] four counts of possession of a firearm during the commission of a crime and one count of criminal damage to property. Tela asserts on appeal that his trial counsel was ineffective in failing to object to the introduction of improper character testimony and in failing to properly investigate his case. We affirm the trial court's denial of the motion, however, because Tela failed to carry his burden of establishing that he received inadequate representation at trial.

---

[1] Two of the aggravated assault charges were merged for sentencing.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that on the evening of May 29, 2008, Amanda Thrash, Tela's ex-girlfriend, was visiting the home of her friend, Christopher Farley and his parents, Anita and William Farley. Christopher Farley's girlfriend, Ashley Godbout, was also at the Farley home that night. Shortly after Thrash arrived, Tela began calling her on her cell phone. Although she was reluctant to speak with Tela, she answered the phone after he called several times. When Tela heard Christopher Farley's voice in the background, he became upset and things escalated after Thrash told him she was at the Farleys' house. Tela apparently was upset that she was spending time with Christopher Farley. Farley then took Thrash's phone and began talking to Tela in an attempt to calm him down, but the conversation erupted into an argument. When Thrash's cell phone died, the argument continued on another phone. At some point Tela indicated that he was coming over to the Farley home to fight, and Christopher Farley told him to come on over.

Sometime later, a car rode by the Farleys' house with someone screaming profanity and insults as Thrash stood outside in the driveway with Anita Farley and Godbout. Thrash could see the figure of a person screaming and hanging halfway out

[2]*Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

of the car window, and she recognized Tela's voice. The car drove by twice and then a series of about five to six shots rang out. She could hear Tela screaming immediately before the shots were fired. Christopher Farley recalled that he had stepped inside the house "for a second" when he heard the shots fired and heard one bullet go through the house. William Farley was also in the house. When Thrash later recharged her cell phone, she discovered a number of voice mails from Tela both before and after the incident. A tape of these messages was played for the jury. The next day, the Farleys discovered bullet holes in the side of their house and a bullet in a bedroom closet. Bullets and casings taken from the Farleys' property were subsequently matched to a gun found in a wooded area behind Tela's home.

In considering Tela's claims that he received ineffective assistance of counsel at trial,

> we apply the two-prong test set forth in *Strickland v. Washington*, [466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984)]. [Tela] must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different. In evaluating the first prong of this test, a strong presumption exists that counsel's conduct falls within the broad range of professional conduct. On appellate review of the trial court's ruling, we accept the trial court's factual findings and credibility

determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Footnote omitted.) *Donald v. State*, 312 Ga. App. 222, 227 (4) (718 SE2d 81) (2011).

1. Tela asserts that his trial counsel was ineffective in failing to challenge the admission of Thrash's testimony characterizing her relationship with Tela, which he contends was improper character evidence.

Thrash testified that her relationship with Tela had ended a day or two before the shooting incident. She stated that she had dated Tela only for a period of about six months, during which they "sometimes" broke up and got back together because it was "an abusive relationship." On cross-examination, Tela's attorney asked Thrash if she thought Tela loved her and she replied that she did not know. Tela asserts that his trial attorney should have objected when, on re-direct, the prosecution pursued the following line of questioning:

Q.    And [the defense attorney] asked you if you thought Mr. Tela loved you, and you said you weren't sure. Can you explain what you mean by that?

A.    It's not the type of love that I grew up with. But I think he had some maybe abusive history in his past, so maybe in his mind he did. I don't know.

Q. When you talk about you're not sure that he loved you, did it have to do with the way he treated you?

A. Yes.

Q. How did he treat you?

A. Always verbally abusive toward me. I remember a point where he dragged me across the asphalt ground on my back, leaving scratches, leaving bruises. People don't do that to people they love. At the hearing on the motion for new trial, Tela's trial counsel admitted that this evidence was harmful to Tela, and he could not say "[i]n the heat of trial" why he did not object.

But whether Tela's trial attorney had objected or not, the evidence was admissible against Tela because

"[e]vidence of prior difficulties between a defendant and a victim is generally admissible when the crime charged was perpetrated against the victim and the evidence demonstrates: (1) the relationship between the defendant and victim, and (2) the defendant's motive, intent or bent of mind. As with any evidence, evidence of prior difficulties may not be unduly prejudicial, remote or confusing to the jury, but we perceive none of these defects here.

(Footnote omitted.) *Tuff v. State*, 278 Ga. 91, 92 (2) (597 SE2d 328) (2004).

Tela argues, however, that the State presented no evidence to show that Thrash was the intended victim of the crime. He asserts that the evidence showed instead that Tela was upset with and coming to fight Christopher Farley. Thus, he contends that evidence of his prior difficulties with Thrash was irrelevant. But Thrash was named as the victim in two of the aggravated assault counts charged against Tela. And the evidence at trial indicated that Tela was angry with both Thrash and Farley that night. Tela's argument ignores testimony from Anita Farley that the person in the car screamed out Thrash's name and called her a "whore," a term Tela also used to describe her in the recorded voice mails. The argument also ignores other evidence indicating that he was angry with Thrash for being with Christopher Farley.

The evidence of prior difficulties between Thrash and Tela during their relationship, therefore, "most certainly demonstrated the state of the relationship between appellant and the victim, and was highly relevant to show his abusive bent of mind toward her." (Citation and punctuation omitted.) *Quintero v. State*, 279 Ga. App. 497, 498 (1) (631 SE2d 723) (2006) (affirming admission of evidence of defendant's abuse of wife during the course of their marriage). And "[t]he probative value of this evidence was not outweighed by any unfair prejudice." Id. "[E]vidence that is otherwise relevant or material to the issues in a criminal case does not become

6

inadmissible simply because it concerns separate offenses, or because it incidentally puts a criminal defendant's character or reputation in evidence." (Citation and punctuation omitted.) *Attaway v. State*, 259 Ga. App. 822, 828 (7) (578 SE2d 529) (2003). See also *Cawthon v. State,* 289 Ga. 507, 508 (2), n. 2 (713 SE2d 388) (2011).

And because it is well settled that the failure to make a meritless objection does not amount to ineffective assistance, Tela failed to establish that he was entitled to a new trial on this ground. See *Scott v. State*, 290 Ga. 883, 889 (7) (a) (725 SE2d 305) (2012).

2. Tela also contends that his trial attorney was ineffective in failing to properly investigate his case. He asserts that his attorney was inadequate in failing (a) to review the voice mail recordings prior to trial; (b) to object to or seek to exclude the recordings from evidence; or (c) to investigate the scene of the shooting, visit the location where the gun was found or speak to the State's witnesses.

(a) Although Tela testified at the motion hearing that his trial attorney told him during trial that he had not listened to the recordings, the attorney testified that he did listen to the recordings "within the last two to three days before the trial." And "[t]he trial court was authorized to reject [Tela's] version of the facts and credit instead the

testimony of his counsel." (Citations and punctuation omitted.) *Stinson v. State*, 286 Ga. 499, 501 (2) (689 SE2d 323) (2010).

Tela also argues that a reference his trial counsel made at trial to an "in-custody statement" during a discussion of the voice mail recordings indicates that his attorney had not listened to the recordings prior to trial. Although the attorney did not recall why he used that language, he reiterated that he had listened to the recordings two to three days before trial. Tela's attorney made the reference after the prosecutor informed the court that the prosecution and defense had agreed prior to trial to redact those portions of the recordings in which Tela referenced being "locked up" at some point during his relationship with Thrash. In confirming that agreement, Tela's attorney stated, "Yes. . . . I think that would be to a disadvantage to my client, just hearing that type of information, that in-custody statement." Thus, the trial court was authorized to conclude that Tela's trial attorney's use of the phrase "in-custody statement," when considered in context, referred to Tela's statements on the tapes that he had been "locked up" and did not reflect a belief that the tapes contained a statement Tela gave while in custody.

(b) Nevertheless, the attorney stated that his failure to object to the admission of the recordings was "counsel oversight," due to the volume of his caseload, and he

made a mistake in not challenging their admission. He said he thought the introduction of the tapes would be damaging "because they were peppered with a lot of offensive language and some racial kind of epithets," but he did not think they "would be the ultimate finality to the case."

But, whether the attorney objected or not, the recordings were admissible as relevant evidence of the nature of Tela's relationship with Thrash and his motive for the shooting. The voice mails left shortly before and after the shooting[3] reflected his state of mind around the time of the crime.[4] "Although motive is not an essential element in proving the crimes charged, the State is entitled to present evidence to establish that there was a motive, and evidence [of Tela's statements on the voice mails] is relevant to prove that he had a motive for committing the crimes and is not rendered inadmissible by the fact that it incidentally puts his character in issue." (Citations omitted.) *Thornton v. State*, 292 Ga. 87, 88-89 (3) (734 SE2d 393) (2012)

---

[3] Tela's motion counsel transcribed five of these voice mails for use at the hearing on his motion for new trial. The transcript indicates that the calls were made on May 29, 2008 at 8:51 p. m. and 11:02 p. m. and on May 30, 2008 at 12:44 a. m.; 1:03 a. m.; and 1:53 a. m. One of the investigating officers testified that the shooting occurred sometime between 9:45 and 9:55 p. m. on May 29, 2008.

[4] In one of the messages, Tela even invited Thrash to "go ahead and give this message to the police."

(upholding admission of evidence of defendant's drug use as evidence of motive). See also *Thomas v. State*, 274 Ga. 156, 162 (6) (549 SE2d 359) (2001) (upholding admission of crime scene videotape reflecting a magazine with a nude picture on the cover); *Stephens v. State,* 214 Ga. App. 183, 186 (5) (447 SE2d 26) (1994) (finding defendant's statement to emergency room technician regarding his dire financial condition to be relevant to issue of motive for arson). Such relevant evidence is admissible, even though it may be inflammatory. See, e. g., *Selley v. State*, 237 Ga. App. 47, 48 (1) (514 SE2d 706) (1999) (upholding admission of defendant's recorded statement to police even though it included references to gang activity, where such activity was a motive for the crime); *Kolokouris v. State*, 271 Ga. 597, 599 (3) (523 SE2d 311) (1999) (rebuttal evidence of racial bias properly admitted because relevant to issue of motive). Thus, Tela cannot demonstrate that his trial counsel was ineffective in failing to raise a meritless objection to this evidence.

(c) Tela further asserts that his trial counsel was ineffective because he failed to investigate the scene of the shooting, to investigate the location where the gun was found or to speak to the State's witnesses.

The evidence at the motion hearing indicated that Tela's attorney requested and received discovery in his case in February 2010 and again in April 2011, several

months before his trial. The attorney testified that he discussed the case with Tela during the "limited opportunities" Tela provided. He explained that the opportunities were limited because "[o]ftentimes," Tela would set appointment dates and then he would not show up, although Tela recalled missing only one such appointment. The attorney also stated that although Tela came to court when his case was on the trial calendar, he often would leave without speaking to his counsel. Nevertheless, they were able to meet on a number of occasions before trial and discuss the case. Additionally, the attorney attempted to contact Thrash and Christopher Farley to interview them before trial, but he was unsuccessful. He explained that often witnesses do not respond to a defense attorney's call. The attorney conceded, however, that he did not attempt to talk to the lead investigator due to oversight and the volume of work, although he apparently had the officer's reports because he referenced them at the hearing.

Tela's trial attorney stated that his defense in the case was to show that no one saw Tela shooting – the crime happened when it was dusk or dark – and the witnesses gave different colors for the car. Moreover, he tried to show that if the car passed by the house once with someone yelling on the passenger side closest to the house, if it turned around in the opposite direction to pass again, that person would have been on

11

the opposite side of the car, making it difficult to shoot. "And so I went into the case with identity, circumstance, and then trying to create as much doubt in the case" and "to create enough fog . . . to hopefully have his freedom not compromised." He explained that he was hampered in the possible defenses he could pursue in the case because Tela admitted to him before trial that he shot at the Farley house that night. Tela repeated that admission at the motion hearing. Thus, the attorney said that he was actively trying to get the best plea deal he could, but Tela rejected the State's offer of twenty years, five to serve.

The trial court found that Tela's trial attorney's representation "was adequate and effective given the facts and circumstances of the case with which trial counsel had to work." The trial court noted the limitations placed on the attorney's trial strategy by Tela's admission that he had, in fact, committed the crimes. The court found that the trial attorney "did investigate and prepare the case, including attempting to contact the State's witnesses, reviewing the State's file on at least two occasions, thoroughly cross-examining the State's witnesses, discussing the case with [Tela], and communicating the State's plea offer to [Tela]." We find no clear error in these findings.

12

Moreover, we find that Tela failed to establish that but for counsel's failure to visit the crime scene or the location where the gun was found and his failure to talk to the State's witnesses, a reasonable probability exists that the outcome of the trial would have been different. Although he describes the resulting effect as "devastating" to the defense, he did not point to any evidence or information that would have been revealed by such investigation. Tela takes specific issue with his trial counsel's failure to visit the crime scene to test Thrash's ability to identify his voice as he yelled out of the car, but he makes no proffer or showing of what such a test may have revealed. Thus, Tela failed to point to any potentially exculpatory evidence his trial counsel may have missed. Because Tela failed to offer any evidence or information that he believes his trial counsel failed to uncover or present at trial, "he cannot satisfy his burden of demonstrating prejudice." (Footnote omitted.) *Franks v. State*, 278 Ga. 246, 263 (2) (B) (7) (599 SE2d 134) (2004). See also *Williams v. State,* 258 Ga. 281, 288 (7) (368 SE2d 742) (1988).

Accordingly, we affirm the trial court's denial of Tela's motion for new trial.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*

13